[L. A. No. 16911.   In Bank.—June 20, 1941.]

LA LAGUNA RANCH COMPANY (a Corporation), Respondent, v. E. G. DODGE, as Administrator, etc., et al., Defendants; HUGO D. NEWHOUSE et al., Appellants.

Russell P. Tyler for Appellants.

Wirt Francis and Leland Crawford for Respondent.

Percy C. Black, Martin J. Weil, Salisbury, Robinson & Himrod, Frederick T. Fuller, Robert E. Paradise, Frederick D. Anderson, Bertram L. Linz, C. La V. Larzelere, McCutchen, Olney, Mannon & Greene, Pillsbury, Madison & Sutro, Lawler, Felix & Hall, Charles C. Stanley, R. K. Barrows, W. F. Kiessig, Harrison Guio, Paul Gregg, L. A. Gibbons, Ralph F. Forch and Morrison, Hohfeld, Foerster, Shuman & Clark, as *Amici Curiae,* on behalf of Respondent.

GIBSON, C. J.—The plaintiff commenced this action in the Superior Court of Santa Barbara County to quiet title

to certain real property situated in that county. Defendants Hugo D. Newhouse and Arthur A. Newhouse appeal from a judgment in favor of the plaintiff. The facts are for the most part undisputed. Prior to October 18, 1935, plaintiff was the owner in fee of the property in question. On or about that date an oil and gas lease was entered into between plaintiff, as the lessor, and C. C. Boatright and A. M. Meacham, as lessees. The lease was to continue for a period of five years and for so long thereafter as drilling operations were being conducted or oil and gas were being produced in paying quantities. The lessor was to receive a sum equal to one-eighth of the market price of the oil and gas produced as a royalty, or if no oil was sold, the royalty was to be paid in kind. After the expiration of one year a rental of a stipulated price per acre per year was provided in lieu of continuous drilling and development by the lessees. The lessees were required to commence the drilling of a well within sixty days of the date of the lease and the first well was to be completed within one year. Breach of any of the terms of the lease and the failure to remedy such breach within thirty days after written notice from the lessor gave the lessor the option to forfeit all rights of the lessees.

In November, 1935, the lessees entered into a written agreement by which they assigned to the defendants herein a fractional interest, therein termed an ''overriding royalty'', in all petroleum, oil, or gas thereafter produced under the terms of the lease. Defendants' claim of an interest in the real property here involved is founded upon this assignment of a fractional interest in the oil to be produced. On or about May 19, 1936, after the president of the plaintiff company had indicated that it was about to declare a forfeiture of the lessees' interest for failure to commence the drilling of a well within the sixty-day period, quitclaim deeds were executed from the lessees and their successors in interest to the lessor, La Laguna Ranch Co. Each deed contained a clause indicating that the lessees had been unable to comply with the terms of the lease. The superior court found that the lessees had forfeited all their right and interest in the land, that the claim of the defendants, Hugo D. Newhouse and Arthur A. Newhouse, was without merit and that neither of the defendants had any right, title or estate in the real property in question. On the basis of these find-

ings a decree was rendered quieting title in favor of the plaintiff, and from this judgment defendants have appealed.

The question thus presented for our determination may be stated as follows: Does the interest of the holder of a fractional share in the production of oil, which is created out of the estate of the operating lessee, survive after the lessee's voluntary surrender of the leasehold by a quitclaim deed?

The term "overriding royalty" is applied generally in the industry to such fractional interests in the production of oil and gas as are created from the lessee's estate. This is true whether the overriding royalty is created by reservation when the original lessee transfers his interest by a sub-lease or whether it is created by grant when the original lessee conveys a fractional share to a third person, as in the instant case. Similarly, the term "royalty" is generally applied to the fractional interests in the production which are created by the owner of the land either by reservation when an oil and gas lease is entered into or by direct grant to a third person. The legal attributes of such royalty interests have been considered in recent opinions of this court. The case of *Callahan* v. *Martin,* 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871], examined the nature of the various interests created under oil and gas leases in California and must be regarded as the starting point in considering the problems here presented. ██ Thus, it is now established that the owner of land does not have an absolute title to the oil and gas in place as corporeal real property, but rather has the "exclusive right" to drill for oil and gas upon his premises. (*Callahan* v. *Martin, supra,* p. 117.) ██ Where the owner of land enters into an oil and gas lease which grants to an operating lessee the privilege of entering upon the land for the purpose of producing oil and gas, the interest thus created in the lessee is a *profit à prendre,* that is an incorporeal hereditament or interest in real property. (*Callahan* v. *Martin, supra,* pp. 118–122.) ██ Where, after entering into such an oil and gas lease, the lessor assigns to third persons fractional interests in the royalties which he has reserved to himself, the holder of such a fractional interest acquires an interest in real property, an incorporeal hereditament analogous to the right to receive future rents of real property. (*Callahan* v. *Martin, supra,* p. 124; *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal. (2d) 637, 651 [52

Pac. (2d) 237].) The court did not determine the nature of the fractional interests in production which are created out of the lessee's estate. It was held, however, that the prior cases dealing with such "overriding royalty" interests on the theory that the assignments transferred personal property of which the lessee had potential possession could no longer be considered controlling in view of the abolishment of the "potential possession" doctrine in California. (*Callahan* v. *Martin, supra,* p. 128; *Schiffman* v. *Richfield Oil Co.,* 8 Cal. (2d) 211, 225, 226 [64 Pac. (2d) 1081].) It is clear, therefore, that the line of California cases dealing with oil leases and overriding royalty interests under the potential possession doctrine can no longer be considered controlling. (See, for example, *Western Oil etc. Co.* v. *Venago Oil Corp.,* 218 Cal. 733 [24 Pac. (2d) 971, 88 A. L. R. 1271]; *Brookshire Oil Co.* v. *Casmalia etc. Co.,* 156 Cal. 211 [103 Pac. 927]; *Smith* v. *Drake,* 134 Cal. App. 700 [26 Pac. (2d) 313]; *Merrill* v. *California Pet. Corp.,* 105 Cal. App. 737 [288 Pac. 721]; *Black* v. *Solano Co.,* 114 Cal. App. 170 [299 Pac. 843]; *Jones* v. *Pier,* 124 Cal. App. 444 [12 Pac. (2d) 646].)

The question whether the overriding royalty interest of the defendants herein survived despite the quitclaim deeds by which the operating lessees surrendered their interest to the lessor has not been answered by the decisions of this court. A similar problem was presented, however, in the case of *Payne* v. *Callahan,* 37 Cal. App. (2d) 503 [99 Pac. (2d) 1050]. The court in that case attempted to apply the principles laid down in *Callahan* v. *Martin, supra,* to the facts there involved. In *Callahan* v. *Martin,* after recognizing that the interest of an operating lessee under an oil and gas lease was in fact a *profit à prendre,* it was determined that the lessor had attempted to convey a fractional interest which was to endure, not merely for the period of the existing lease, but after a termination of the lease as well. Thus, the lessor was held to have created a fractional interest not only in his own reserved royalty interest throughout the pending lease, but to have granted in addition a fractional interest in the reversion. (See *Schiffman* v. *Richfield Oil Co., supra,* p. 223; *Dabney-Johnston Oil Corp.* v. *Walden, supra,* p. 651.) The court held that the assignee of such an interest became, in effect, a tenant in common of the landowner's exclusive right to drill for oil and gas after the existing lease had terminated. (*Callahan* v. *Martin, supra,* p. 125.) The

holder of such an interest, after the termination of the existing lease, was held to possess a right of entry to go on the land and drill for the oil, or, in other words, to have been granted a *profit à prendre* similar to the interest held by the ordinary operating lessee under an oil and gas lease. In *Payne* v. *Callahan, supra,* the District Court of Appeal reasoned that if the lessor's assignment of a portion of his royalty interest had created in the assignee a *profit à prendre* in *Callahan* v. *Martin,* then the assignment of an overriding royalty by an operating lessee should be held to create a *profit à prendre* in his assignee. (*Payne* v. *Callahan, supra,* p. 516.) Similarly, the court said that if the *lessor's* assignment in *Callahan* v. *Martin* had made the assignee a tenant in common of the *profit à prendre,* the operating *lessee's* assignment should be held to have made the assignee a tenant in common in the lessee's *profit à prendre.* (*Payne* v. *Callahan, supra,* p. 517.) Relying upon the decision in *Payne* v. *Callahan,* defendants urge that the overriding royalty granted to them by the operating lessees herein made them tenants in common in the lessees' *profit à prendre.* Therefore, it is contended, as tenants in common of an interest in real property, defendants hold an interest which survives despite the asserted co-tenants' attempt to quitclaim the entire interest back to the landowner-lessor.

The position urged by defendants in this appeal is one which is supported by the case of *Payne* v. *Callahan, supra.* We are convinced, however, that the position there taken by the District Court of Appeal is based upon a misconception of this court's holding in *Callahan* v. *Martin, supra.* In that case we recognized that the interest created in any case depended upon the intention of the parties involved. Under the facts there presented, we found that the landowner-lessor had intended to grant a fractional interest in the reversionary interest as well as a fractional share of his reserved royalty during the existence of the pending lease. (See *Schiffman* v. *Richfield Oil Co., supra,* p. 223; *Dabney-Johnston Oil Corp.* v. *Walden, supra,* p. 651.) But it is clear that the landowner-lessor does not intend in every case to make his assignee a co-tenant in his exclusive right to drill for gas and oil. He may grant merely a fractional interest in his reserved royalty, an interest which is not intended to endure beyond the limits of an existing lease.

Such a limited interest creates in the holder an interest in real property, an incorporeal hereditament (*Callahan* v. *Martin, supra,* pp. 123, 124; *Dabney-Johnston Oil Corp.* v. *Walden, supra,* p. 651), but it does not contemplate the grant of a *profit à prendre.* The assignee does not intend to attempt operation himself and is given no right of entry for such purpose. Those rights are held by the operating lessee, and the holders of royalty interests contemplate nothing more than the receipt of their share of the oil and gas production.

Similarly, while the operating lessee may assign an interest in his *profit à prendre* which is intended to make the assignee a tenant in common of his entire leasehold estate, he may, on the other hand, intend to retain in himself the operating rights contained in the *profit à prendre,* conveying to the assignee merely a fractional share of the oil and gas produced in the form of an overriding royalty. (See *Schiffman* v. *Richfield Oil Co., supra,* pp. 224, 225.) Thus, in so far as *Payne* v. *Callahan, supra,* holds that the fractional interests created either by the lessor or the operating lessee constitute a tenancy in common in a *profit à prendre* as a matter of law, it is expressly disapproved. In any case, the intention of the parties is controlling, and in the absence of a clear indication that such was the intent, the court will not construe royalty interests created for the duration of a specific oil and gas lease as granting the right to enter upon the land in question for the purpose of carrying on oil production or as creating a tenancy in common in the *profit à prendre* for that purpose. The instrument creating the overriding royalty interests of the defendants herein evidences no intent that defendants were to become tenants in common of the lessees' *profit à prendre.* The instrument recites the fact that the operating lessees were required to commence the drilling of an oil well and indicates that the defendants' only function was that of furnishing capital for this purpose. All actual operation was left in the hands of the lessees and it is clear that the parties contemplated no right of entry in the defendants for the purpose of drilling for oil and gas. It follows that no tenancy in common was created in the *profit à prendre* of the operating lessees.

This court in *Schiffman* v. *Richfield Oil Co., supra,* p. 225, did not define the nature of the interest created by the assignment of such overriding royalty interests as are present

here. It was assumed, however, that no interest in the operating lessee's *profit à prendre* was intended to be conveyed. In *Callahan* v. *Martin, supra,* pp. 123, 124, similar rights to share in the production of oil and gas were held to be interests in real property when created *by the lessor*. That holding was based upon the analogy drawn between the right to receive future rents from real property and the right to receive oil royalties reserved by the lessor in an oil and gas lease. (*Callahan* v. *Martin, supra,* p. 123; *Dabney-Johnston Oil Corp.* v. *Walden, supra,* p. 651; *Schiffman* v. *Richfield Oil Co., supra,* p. 223; see 101 A. L. R. 884, 886.) A similar conclusion may be reached where the lessee, not intending to operate the oil wells himself, makes a sub-lease and reserves an overriding royalty for himself. Again the analogy between rents and the reservation of oil royalties justifies the classification of such oil royalties as incorporeal interests in real property. Where, however, the landowner *grants* an oil "royalty" without having previously leased the land to another (see *Denio* v. *Brennecke,* 6 Cal. App. (2d) 678 [45 Pac. (2d) 229]), or where the operating lessee *grants* an "overriding royalty", it is clear that the interest thus created cannot be fitted into the category of rent. This court has recently referred to the fact that the traditional categories of real property interests crystallized long before interests such as these found their way into the courts. (*Callahan* v. *Martin, supra,* p. 115.) The law relating to such oil rights has been said to be in a formative stage and the interests thus created have been considered *sui generis*. (*Dabney-Johnston Oil Corp.* v. *Walden, supra,* pp. 650, 651; *Schiffman* v. *Richfield Oil Co., supra,* p. 226.) Thus, although only a portion of the oil royalties here considered can actually be compared to rent in the traditional sense, the purpose and scope of all such royalty interests are so similar that all should be considered equally to be incorporeal interests in real property, subject to the same requirements and protected by the same safeguards. (See *Spath* v. *Seager,* 39 Cal. App. (2d) 10, 14 [102 Pac. (2d) 350]; *Fairbairn* v. *Eaton,* 6 Cal. App. (2d) 264, 268 [43 Pac. (2d) 1113]; *Denio* v. *Brennecke, supra;* 3 Summers, Oil & Gas, sec. 556, p. 332 et seq.; 26 Cal. L. Rev. 480–486; 13 So. Cal. L. Rev. 393, 410–422; 11 So. Cal. L. Rev. 319, 326; 25 Cal. L. Rev. 220.)

■ Defendants' overriding royalties were, therefore, interests in real property. (Cf. *Phillips Petroleum Co.* v. *Taylor*, 116 Fed. (2d) 994, 995; *Rowan* v. *Harburney Oil Co.*, 91 Fed. (2d) 122, 124; *King* v. *Gants*, 77 Okl. 105 [186 Pac. 960]; *Tennant* v. *Dunn*, 130 Tex. 285 [110 S. W. (2d) 53].) The interests thus created were not unlimited but were determinable interests limited to the duration of the existing lease. Termination of the oil and gas lease would result in the termination of the interests created under it. (See *Phillips* v. *Bruce*, 41 Cal. App. (2d) 404 [106 Pac. (2d) 922].) Defendants do not contest the general principle involved, but it is contended that the lease in the present case was not lawfully terminated since the forfeiture provisions in the lease were not complied with. Ordinarily, however, such oil and gas leases contain clauses permitting the lessee to cease operations and to surrender the lease if he no longer considers it possible to continue operations profitably. The lease here involved provided: "5. Lessee may at any time . . . quitclaim the said premises, or any part thereof, to the Lessor . . . Upon the quitclaiming of any part of the land to the Lessor, his successors or assigns, all rights and obligations of the parties . . . shall cease and determine . . . " It follows that the surrender of the leasehold interest by the lessees constituted a termination of the *profit à prendre* and the leasehold. Defendants, as holders of the overriding royalty interests, had knowledge of the terms of the original lease incorporated by reference into the instrument creating the overriding royalties. Defendants contemplated the purchase of a speculative interest in real property which they intended should be determinable by the lessees. Failure to meet the conditions of the lease might result in forfeiture. Continued drilling might prove that no oil could be produced from the land in question. Any of these contingencies would result in the termination of defendants' interest. We do not see how the surrender of the leasehold by the lessees imposes any uncontemplated risk upon the holder of the overriding royalty. No contention was made that the surrender of the lease was a fraudulent act or that others were unjustly enriched at the expense of the overriding royalty holders. If fraud or inequity were present, the courts would stand ready to provide redress for the injured party. In the present case, however, the surrender of the leasehold by quitclaim deeds operated to terminate the in-

terests of the defendants, as well as the interest of the lessees, in plaintiff's land.

The judgment is affirmed.

Shenk, J., Curtis, J., Traynor, J., and Edmonds, J., concurred.

CARTER, Dissenting.—I dissent.

The facts of the controversy presented in this action are simple. Plaintiff, the owner of real property, leased its property to Meacham and Boatright for oil and gas drilling and production purposes. As rental or consideration for the right thus granted, the lessees agreed to pay to the lessor ⅛ of the market price of the oil and gas removed from the property and sold, or ⅛ of the oil and gas so removed if the same were not sold. Thereafter, the lessees, for valuable consideration, assigned to appellants fractional interests in the oil and gas to be recovered from the leased property. The lessor had notice of the assignment. The lease contained a provision giving to the lessees the option of terminating the lease, surrendering the premises and ceasing operations whenever they chose, and thus be freed of any further liability or obligation under the lease. After the assignment and without the consent of the appellants, assignees, the lessees exercised that option and terminated said lease by delivering a quitclaim deed of the premises to the lessor. The lessor in this action obtained the judgment here appealed from quieting its title against the interests and rights of the assignees.

Briefly stated, the issue is whether a lessee may surrender his lease to the lessor, and thereby cut off the rights of partial assignees of the lessees. To propound the issue is to answer it in the negative, unless all principles of equity and justice are to be ignored.

It is conceded by the majority opinion that the right of lessees in the oil and gas lease is an interest in real property, attaining the status of a *profit à prendre*. (*Callahan* v. *Martin*, 3 Cal. (2d) 110 [43 Pac. (2d) 788, 101 A. L. R. 871].) Therefore, it must necessarily follow that the interest which an assignee of the entire leasehold obtains is an interest in real property, an incorporeal hereditament, a *profit á prendre*. (See *Callahan* v. *Martin, supra; Dabney-Johnston Oil*

*Corp.* v. *Walden,* 4 Cal. (2d) 637 [52 Pac. (2d) 237].) Under such circumstances the law is clear that a lessee cannot defeat his assignee's interest by surrendering or abandoning the lease. (*Payne* v. *Callahan,* 37 Cal. App. (2d) 503 [99 Pac. (2d) 1050]; 32 Am. Jur. 345, 715; Thompson on Real Property, Perm. Ed., vol. 3, p. 778.) By a partial assignment of the entire leasehold the lessee and the assignee become tenants in common of the *profit à prendre,* an interest in real property. (*Payne* v. *Callahan, supra.*) But for some undisclosed reason the majority opinion stops there. When the assignment by the lessee is of what might be termed a portion of the proceeds of the oil to be produced from the property under the lease and the lessee is to develop and operate the oil production enterprise, then the majority opinion determines that the assignee in such an assignment does not acquire a portion of the *profit à prendre,* or portion of the leasehold. It does cling, however, to the idea that such an assignee acquires an interest in real property but that that interest does not assume the status of a *profit à prendre.* Why such shift in position is made is not clear. If it is with reluctance, as it apparently is, that the majority opinion denominates the right of an assignee as an interest in real property of any dignity, then it must be that the motive therefore is to protect in some manner the interest of such assignee. That protection sought to be obtained must be to qualify the assignment for recordation, and thereby give constructive notice to subsequent assignees of the lessee that their rights are inferior to the fractional assignment. With the accomplishment of that protection, I am fully in accord. But why stop there? The majority opinion holds that the assignee has an interest in real property, and I see no reason for not carrying the reasoning from that premise to its logical conclusion. The assignee has an interest in real property, namely, an interest in the leasehold. Therefore the rule comes into operation that the lessee cannot defeat that interest by a voluntary surrender of the leasehold or by exercising his option to terminate the lease. The liabilities of the assignee that may flow from such a conclusion should not deter the court in securing to the assignee the rights to which he is entitled. He should assume the burdens along with the benefits and if he desires to limit them he may do so in many instances by appropriate agreement. For these reasons I find no sound

basis for disapproving the case of *Payne* v. *Callahan, supra,* which is based on the same reasoning and is decisive of the conclusion I have reached.

Even if we assume that the majority opinion is correct in concluding that the interest assigned by the lessees in this case is not a *profit à prendre* or other type of interest in real property, because the right to enter and extract the oil is not included therein, as the assignees are interested in merely a share of the oil produced or the proceeds thereof, and intend to have the lessees operate the property rather than themselves, it must be conceded that the assignee does have an interest that is entitled to equitable protection. In *Schiffman* v. *Richfield Oil Company,* 8 Cal. (2d) 211 [64 Pac. (2d) 1081], this court felt obligated to protect the interest of the assignees of the lessee because they had such an interest as deserved and required protection. This result was accomplished without regard to whether those assignments were considered a transfer of an interest in the oil to be produced from the property or in the proceeds from such oil, and notwithstanding the fact that the assignees had no power to enter upon the property and extract the oil. In the case last cited, this court said at page 225:

"We are of the view that whether or not the royalty assignments in this case transferred to the holders thereof an interest in the leasehold, that is, in the *profit à prendre* to produce oil, in any event they vested in the holders a right to share in the proceeds of oil produced during the continuance of the lease by an assignee of the lease with notice. We prefer to place our decision on this ground without determining the question of interest in the leasehold estate as such, for the reason that a decision as to that matter might have important consequences as to problems such as that of liability under instruments of this type which are not directly presented in the instant case." And again at page 226:

"The rights of the holders of royalty assignments to an interest in the proceeds of oil produced by an assignee of the leasehold should not depend on whether the assignment is of a percentage of the oil 'to be produced, saved and sold', as in *Western Oil etc. Co.* v. *Venago Oil Corp., supra,* or is of a percentage of the net proceeds as in the instant case. Purchasers of royalty interests are generally investors who are not prepared to accept delivery of oil in kind, or to market

their interest in the output of the well. Under the instruments in the Venago case assigning percentages of the oil to be produced, saved and *sold,* the lessee clearly had the right to market the oil, returning to the royalty holder a money payment. This likewise was the obligation of the lessees herein.

"*The holders of royalty interests from the lessee are not adequately protected unless they have a claim upon the proceeds of oil produced by one to whom the lessee has transferred the lease with notice of the royalty assignments.* The purchaser of royalty assignments makes a highly speculative investment. The well may never be brought into production, or may soon fail. *In consideration of investing his funds in an enterprise with a high risk of total loss, the purchaser of a royalty interest receives an assignment of a percentage* of the oil to be produced, or the proceeds therefrom, which is expressly, as in the Venago case, *supra,* or impliedly, as in the instant case, *for the continuance of the lease. It is certainly not within the contemplation of the royalty holder that in addition to the other risks involved, the lessee may at any time terminate the royalty holder's interest by assigning the lease, and leave the royalty holder either remediless or with a claim for a share of the price received by the lessee for the transfer of the leasehold, or a claim for monetary damages.* In view of the impossibility of estimating the life of the well, which may be for a long period of years, the amount of oil to be produced therefrom, and the market price over a long term, to give the royalty holder a present money claim in the event of an assignment of the lease manifestly would be inadequate. He has bargained for an interest in the oil produced during the term of the lease, or in the proceeds therefrom, and that is what he should receive. The law is not powerless to protect him during a lack of exact precedent."

Surely that interest should be protected whatever may be the name attached to it. There is no magic in a name. The assignees, although they may have contemplated that the operation of the property would be left to the lessee, certainly did not consider their interest so tenuous and uncertain that it could be surrendered at the whim of the lessees, their assignors. If they had had such understanding they would never have given anything of value for the assignment. If the aim of the fractional assignment or assignment of the

proceeds or oil to be produced is to furnish capital for the operation and development of the property, then it is contemplated that the property will be operated and, of course, in order for such operation to occur, the lessees must not be permitted to surrender the property and terminate the lease. It must be remembered that as between the lessor and lessees the right to terminate the lease is a right pertaining solely to the lessees. It is an option they may exercise without regard to the lessor's desires. We are not therefore concerned with the interests of the lessor, and it might well be said that the only issue is one of the authority of the lessee to surrender the lease. If he has no such authority because of the assignment, then any assumed exercise of that power is nugatory. There is no violation of equitable principles. The lessor is not injured in any respect by the requirement that the lessee may not terminate the lease without the consent of the assignees for the reason that he has no legal right to compel any such termination or surrender. It is a matter solely within the discretion of the lessee. It is not a case wherein the lessor is terminating the lease for a breach by the lessee, an instance in which the right is his and not the lessee's. I am firmly convinced that every consideration of justice and equity in this case weighs heavily on the side of the assignees. As I see the situation which is presented in this case, on the one hand we have the lessor who is bound to keep the lease in force and has no legal right to compel the lessees to exercise the option of termination. In other words, he has no legal interest in the matter. He has granted the lease and has therein granted the right to the lessee to terminate it and to assign it. He must, therefore, contemplate that there will be an assignment. On the other hand, we have the assignee who has in good faith invested his money on the assumption that he will receive a return from the oil produced, that the lessee will develop and drill the property, and that he will not without justification terminate the lease and thus wipe out all of his rights. The lessee owes these duties to the assignee. The majority opinion in concluding that the assignees intended to take the risk of a termination by the lessees because of the provision for termination in the lease is based neither on sound reason nor founded on natural human tendencies. True, the assignees knew of that provision, but they also must have contemplated when investing

their money that the lessees could not destroy their entire right at the lessees' whim or caprice. To me it is a sad commentary on our system of jurisprudence to concede that this court is so impotent that it cannot give protection to the assignees in a case of this kind when to do so is to injure no one, violate no rule of law, but on the contrary is to grant a remedy justly deserved. I positively refuse to give my assent to such a doctrine.

The circumstance that the lessor was about to declare a forfeiture of the lease for an alleged breach by the lessees when the surrender was made, is of no importance. The fact remains that no forfeiture had been declared, and from all that appears from the record there may have been many valid defenses to such action, or it may have been a case justifying equitable relief from forfeiture.

In my opinion the judgment should be reversed.

Appellants' petition for a rehearing was denied July 19, 1941. Carter, J., voted for a rehearing.