[Civ. No. 14729.   Second Dist., Div. Three.   Apr. 30, 1945.]

GLYWN S. CHASE, Respondent, v. RALEIGH P. TRIMBLE et al., Appellants.

Arthur C. Fisher for Appellants.

Durley & Downes, W. Mark Durley and John H. Todd for Respondent.

DESMOND, P. J.—Plaintiff commenced a quiet-title action on August 11, 1943, against numerous defendants, including Raleigh P. Trimble and Helen Kay Trimble, appellants herein. A default was entered against several of the defendants after the time for answering had expired, and other defendants, subsequent to the commencement of the action, executed quitclaim deeds and were dismissed as parties defendant. The two mentioned defendants, Mr. and Mrs. Trimble, appeal from the judgment quieting title in plaintiff to a particularly described parcel of real property situated in the Rancho El Rio de Santa Clara o' La Colonia, County of Ventura, State of California.

There is no factual dispute in this case since it was presented to the trial court upon an agreed statement of facts, which are, briefly, these: On April 25, 1934, plaintiff (owner of the fee) and his wife, as landowner-lessors, entered into an oil and gas lease with defendant Raleigh P. Trimble, as lessee, covering the property above mentioned, which lease was duly recorded. The lease was to continue for a period of five years and so long thereafter as drilling operations on the premises were being conducted or deferred under provisions thereof. Lessee was to have the sole and exclusive right of prospecting the premises and drilling and was required to start the drilling of a well within 90 days from the date of the agreement, but was permitted, under the terms of the lease, to extend the period for commencing the first well by giving lessor written notice and paying a monthly rental of a stipulated price per acre. Lessor was to receive as royalty "a sum equal to one-eighth of the market price of all oil produced by it from said premises," as well as one-eighth of the proceeds from the sale of any gas sold by lessee. The lease also provided that nonperformance by lessee of any of the acts or covenants required under the lease, ninety days after written complaint by lessor, at lessor's option would constitute a forfeiture of lessee's rights. Drilling operations could "be suspended or curtailed . . . when there is no market for the oil, or so long as the established and posted market price offered by the major oil purchasing companies for oil of the quality produced on said premises, in the district in which the premises are located, shall be less than seventy-five cents per barrel at the well. . . ."

On April 22, 1936, almost two years after the execution of the lease, lessee Raleigh P. Trimble and Helen Kay Trimble, his wife, assigned "all their right, title and interest" in the lease to Vaca Oil Exploration Company, hereinafter called assignee, reserving to themselves an overriding royalty of $2\frac{1}{2}$ per cent "from the gross proceeds of any oil and/or gas produced and sold from any and/or all of the lands embraced," which instrument was also duly recorded. On July 8, 1938, more than four years after the execution of the lease, the assignee quitclaimed the property, including all rights in the lease, to the plaintiff, the original lessor. No drilling operations on the premises were ever started by the lessee or the assignee. Nor is there any indication in the record that any rental was ever paid for an extension of time in which to

commence drilling operations. Two wells were drilled on parcels of land adjoining the premises involved in this action, prior to the assignee's execution of the quitclaim deed. The oil produced from those wells at no time was marketable at a price in excess of 38 cents per barrel, and the established and posted market price offered by the major oil purchasing companies, in the district in which the premises were located, for oil of the quality produced from said wells, was less than 75 cents per barrel at the well. No notice of any default of any of the terms or covenants of the lease was ever served by lessor upon lessee pursuant to the terms of the lease. Plaintiff's quiet-title action was filed more than five years from the date of the execution of the lease. In answer to plaintiff's complaint, defendants entered a general denial of each and every allegation, and further alleged that the overriding royalty of 2½ per cent reserved under their assignment to the Vaca Oil Exploration Company constituted a valid and subsisting lien and claim superior to the right, title and interest of the plaintiff.

Upon these facts, the trial court found for plaintiff and by its judgment the title to the real property involved was quieted against "all claims, demands, or preten[s]ions, of said Defendants."

Appellants state that the sole question presented on the appeal is whether an assignee of a lessee under an oil and gas lease, through voluntary surrender by quitclaim of the leasehold, can divest the original lessee of an overriding royalty interest reserved in the transfer of the lease to the assignee?

█ The interest which the lessee acquired under the oil and gas lease was a *profit à prendre,* an interest in real property (*La Laguna Ranch Co.* v. *Dodge* (1941), 18 Cal.2d 132, 135 [114 P.2d 351, 135 A.L.R. 546]; *Callahan* v. *Martin* (1935), 3 Cal.2d 110, 122 [43 P.2d 788, 101 A.L.R. 871]; *Dabney* v. *Edwards* (1935), 5 Cal.2d 1, 11 [53 P.2d 962, 103 A.L.R. 822]; *Dabney-Johnston Oil Corp.* v. *Walden* (1935), 4 Cal.2d 637, 649 [52 P.2d 237]). █ By its terms the lease permitted an assignment, in whole or in part, by either the lessor or the lessee. By the recorded assignment the lessee and his wife assigned not only all their right, title and interest in the lease under consideration, subject to a reservation of a 2½ per cent overriding royalty, but also in eight additional

leases involving other neighboring lands subject to the same reservation, and in consideration of an agreement that the assignee pay to them the sum of $40,000 "payable only, however, out of ten per cent. (10%) of any oil and/or gas produced and sold from ground covered by the said nine leaseholds." Thus, the sole and exclusive right to operate, i. e. the entire *profit à prendre,* was transferred to the assignee with no reservation on the part of the lessee and his wife of any right to enter the premises for the purpose of drilling for oil and gas; their only interest was that of an overriding royalty,—a fractional share of the oil and gas produced and sold.

In *La Laguna Ranch Co.* v. *Dodge, supra,* where the court considered the question whether the interest of the holder of a fractional share in the production of oil, created out of the estate of the operating lessee, survived after the lessee's voluntary surrender of the leasehold by quitclaim deed, it was held (p. 140) that while the overriding royalties were interests in real property, they "were not unlimited but were determinable interests limited to the duration of the existing lease. Termination of the oil and gas lease would result in the termination of the interests created under it." While in the La Laguna case the facts differ from those in the case at bar, the situation is not such as would change the character of the overriding royalty interest. In the former case the original operating-lessee executed the quitclaim deed, while in the present case, as we have indicated, the quitclaim was executed not by the original lessee but by his assignee, who, within the intention of the parties, was to become the actual operator, and who took with all the rights and privileges and subject to all the duties and liabilities fixed by the lease. (See Civ. Code, §§ 822 and 823.) The lease provided that the lessee could at any time, either before or after discovery of oil on the premises, quitclaim the land, or any part of it, to the lessor and all rights and obligations of the parties thereafter were to cease. It further provided that if "the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is hereby expressly granted, *the covenants hereof shall extend to their . . . assigns. . . ."* (Italics added.) Under the express terms of the lease, its provisions were to extend to the assignee and it, therefore, had the right to quitclaim the premises, in the absence of any fraud or inequity, and thereby legally to terminate the lease.

Whether the quitclaim deed was sufficient to destroy the interest of the lessee-assignors is dependent upon whether they, having made their assignment without retaining the right to go upon the land to operate, are to be considered cotenants in the *profit à prendre*. Under the reasoning of the court in the La Laguna case, *supra*, they are not to be so considered, and they can derive no comfort from the case of *Payne* v. *Callahan* (1940), 37 Cal.App.2d 503, 517 [99 P.2d 1050], where the court enunciated the principle that the owner of an overriding royalty and his successors in interest became co-tenants in the *profit à prendre* with the lessees and their successors in interest. This principle has been expressly disapproved by the Supreme Court in the La Laguna case, where the court stated (p. 138) : "Thus, in so far as *Payne* v. *Callahan, supra,* holds that the fractional interests created either by the lessor or the operating lessee constitute a tenancy in common in a *profit à prendre as a matter of law,* it is expressly disapproved. In any case, the intention of the parties is controlling, and in the absence of a clear indication that such was the intent, the court will not construe royalty interests created for the duration of a specific oil and gas lease as granting the right to enter upon the land in question for the purpose of carrying on oil production or as creating a tenancy in common in the *profit à prendre* for that purpose." (Italics added.) The assignment in the instant case indicates that the parties did not intend to create a tenancy in common in the leasehold estate, nor was there any intent on the part of the lessee and his wife to limit, by any personal covenants with the assignee, the right to quitclaim the property. Appellants' overriding royalty interest, not entitling them to cotenancy and limited, as it was, to the duration of the lease, expired when their assignee executed and delivered the quitclaim deed to the land-owner-lessor.

We have not overlooked the argument contra urged by appellants based upon the following italicized portions of an excerpt from the opinion of the La Laguna case (p. 139) : ". . . In *Callahan* v. *Martin, supra,* pages 123, 124, similar rights to share in the production of oil and gas were held to be interests in real property when created *by the lessor.* That holding was based upon the analogy drawn between the right to receive future rents from real property and the right to

receive oil royalties reserved by the lessor in an oil and gas lease. [Cases cited.] A *similar conclusion may be reached where the lessee, not intending to operate the oil wells himself,* makes a sub-lease and *reserves an overriding royalty for himself.''* (Italics by appellants.) The argument that the facts in the present case bring it within the foregoing excerpt is not convincing since appellants fail to note the distinction between a sublease, which conveys an interest less than the leasehold with a reversion to the sublessor, and an assignment, which conveys the entire leasehold to the assignee.

██ Nor have we overlooked the further contention of appellants that plaintiff could not quiet title as against them for two reasons, namely, that plaintiff did not give notice as required, and that such notice would have been ineffective ''because Lessee had fully complied with the provisions of the lease, and the same cannot be terminated by notice unless at the time of such notice the price of oil of the quality *producable* (sic) on the premises, as offered by the major oil producing companies, was seventy-five cents per barrel at the well; or until twenty years had elapsed and at the expiration of said twenty years there was no production on the premises.'' (Italics added.) Since we have already held that the quitclaim by the assignee legally terminated the lease and all interests created under the leasehold, it is unnecessary for us to discuss this argument at any great length, but it seems sufficient to point out that under the terms of the lease notice of default was not a prerequisite to a voluntary surrender of the lease by quitclaim deed. ██ Also, appellants have misinterpreted the provisions of the lease respecting the suspension of drilling operations ''so long as the established and posted market price offered by the major oil purchasing companies for oil of the quality *produced on said premises,* in the district in which the premises are located, shall be less than seventy-five cents per barrel at the well.'' (Italics added.) Appellants attempt to substitute the word ''producible'' for the word ''produced,'' but this cannot be done for under the terms of the lease the drilling operations could be suspended only in the event drilling operations had been conducted on the premises and the value of the quality of the oil *''produced on the premises''* was less than seventy-five cents per barrel. This clause contemplated production on the premises as well as in the district. ██ Nor can appellants derive any benefit from

the twenty-year clause of the lease, which provided that "At the end of twenty years from the date hereof all rights to drill *additional wells* shall cease and thereafter Lessor shall have the right to lease said premises to others. . . ." (Italics added.) This provision merely limited the right to drill additional wells and is not to be read in connection with the provisions respecting the right to defer commencement of drilling operations for five years by payment of rental or the right to suspend operations under the suspension clause.

The judgment is affirmed.

Shinn, J., and Wood (Parker), J., concurred.