[Civ. No. 19134. Second Dist., Div. Three. Nov. 7, 1952.]

GRACE C. HOWARD et al., Appellants, v. GENERAL PETROLEUM CORPORATION (a Corporation) et al., Respondents.

John N. Metcalf and Elon G. Galusha for Appellants.

D. W. Woods, J. M. Jessen, Martin J. Weil, Cree & Brooks and John W. Brooks for Respondents.

VALLÉE, J.—This case was here before. (*Howard* v. *General Petroleum Corp.*, 108 Cal.App.2d 25 [238 P.2d 145].) On the former appeal, it appeared that after all the evidence of the parties was in, the court had rendered a judgment of nonsuit instead of making findings of fact. We reversed the judgment of nonsuit with directions to the trial court to make findings and conclusions of law, and to render judgment thereon. Thereafter, the trial court made findings and conclusions of law, and rendered judgment for defendants. Plaintiffs appeal from that judgment.

The facts are stated in our former opinion, and need not be

repeated except to skeletonize them for the purpose of understanding the assignments of error.

Prior to 1926, plaintiffs, the owners of Lot 18, block 19 of Athens, in Los Angeles, together with the owners of adjoining Lot 19, were lessors in a community oil and gas lease. Royalty was to be paid to the lessors at the rate of one eighth of production, one half to the owners of Lot 18, and one half to the owners of Lot 19, whether production be from one lot or the other. A well had been drilled on Lot 19. On March 27, 1926, the lessees assigned the lease to defendant General Petroleum Corporation, which operated the well and paid royalties until December 1, 1932. On October 26, 1932, General Petroleum bought Lot 19. On December 1, 1932, General Petroleum received from plaintiffs a deed to Lot 18 and a release of all its obligations under the lease, paying therefor $1,000 and other consideration. Plaintiffs have retained the consideration and have not rescinded, or attempted to rescind, the transaction. On January 11, 1933, General Petroleum conveyed Lots 18 and 19 and the well on Lot 19, and transferred all equipment and personal property owned by it and located on the lot, to R. P. Cooney. On January 24th, Mr. Cooney entered into an oil and gas lease of Lot 19 with defendants Jack Herley and Paul L. Kelley who reconditioned the well and have operated it since that time, paying royalties to the lessor but none to plaintiffs. This action is to recover damages in the amount of royalties on the production from the well on Lot 19 since December 1, 1932.

The court found that by a grant deed dated December 1, 1932, plaintiffs conveyed Lot 18 to General Petroleum, and concurrently therewith released it from the performance of all obligations under the lease. Plaintiffs contend this finding is without support in the evidence. The contention is without merit. Plaintiffs executed a grant deed, dated December 1, 1932, acknowledged January 4, 1933, of Lot 18 to General Petroleum, and an instrument also dated December 1, 1932, and acknowledged January 1, 1933, which reads that in consideration of $1,000 and the assumption by General Petroleum of their obligation to pay back taxes and assessments in the amount of $1,286.19 ''we hereby release General Petroleum Corporation . . . from any and all claims for damage occasioned by virtue of their operation under'' the lease, and ''acknowledge that said General Petroleum Corporation . . . has fully performed each and every obligation to be performed thereunder by lessee.''

These instruments were sufficient to convey all of plaintiffs' interest in the lease to General Petroleum unless they were procured by fraud. The complaint alleged that General Petroleum represented to plaintiffs that the well was not producing oil or gas in paying quantities, and that it was the intention of General Petroleum to abandon the same; that plaintiffs believed the representations, and in reliance thereon sold Lot 18 to General Petroleum; that the representations were false and made with a fraudulent intent. The court found that none of the plaintiffs was induced to sell Lot 18 to General Petroleum or to execute the deed or the release as a result of any false or fraudulent representation made to any of them by General Petroleum. The court also found that at the time they were executed, General Petroleum intended to abandon the oil well situated on the lands conveyed by the lease, either itself or through some third party, and that the allegations of fraud are not true. The court further found that General Petroleum produced no oil from the well on Lot 19 after December 1, 1932, and had no knowledge or notice that the well was not abandoned, or that it was operated thereafter for the production of oil and gas. These findings are supported by substantial evidence.

In the fall of 1932, General Petroleum was operating 18 wells in the Athens field. The price of oil was low. All of the wells were "wet," in bad condition, and could not be operated at a profit. General Petroleum decided to discontinue all operations in the Athens field, and to abandon all of the wells. When its production department advised Mr. Needham, head of its land department, of its intention to abandon the wells, Mr. Needham determined that General Petroleum could save money if it bought the fee title to Lots 18 and 19 for a price less than the cost of plugging and abandoning the well on Lot 19 and removing the concrete and otherwise cleaning the surface of the ground, and sell the well. It abandoned all but four of the 18 wells. On October 26, 1932, it purchased Lot 19 for $1,200 cash and payment of $881.12 in delinquent taxes and assessments. Plaintiffs were then in Michigan. There was a delinquency of $1,286.19 in unpaid taxes and assessments, liens on Lot 18. A suit was pending to foreclose a street bond, a lien on the property.

On December 12, 1932, General Petroleum sent a letter to plaintiffs in which it said: "If you desire to relieve yourself of any obligations to pay these back taxes we will assume this

obligation and pay to you the sum of $1,000.00 in return for a deed to us to the property and release of the obligations of the lessee under the terms and conditions of the lease." On December 16 plaintiffs replied, accepting the offer "for the property and lease." The deed and release were then sent to plaintiffs and executed. By the end of 1932, General Petroleum had discontinued operation of all wells it had had in the Athens field. It sold Lot 19 and three other wells to R. P. Cooney. Cooney, at the time, was in the business of salvaging oil wells and selling used oil well equipment.

The testimony of plaintiff Grace C. Howard by deposition was to the effect that she had received letters from General Petroleum other than the one of December 12, 1932, containing the offer; that the letters were lost or destroyed; that one stated "that the field was no longer profitable to operate and that therefore the field was being abandoned and would we accept——I think there was another letter——but that is rather hazy——but would we accept $1,000 in lieu of the back taxes that were accumulating" and "that the price of the oil was so low that it was no longer profitable to operate the field, that stands out quite clear in my mind . . ." She could not remember having signed any instrument other than the deed. She testified it was "so long ago that it is very hazy." She also testified that the letter of December 12, 1932, was the letter she received.

Plaintiff Margaret C. Savery, who was in school in 1932, testified by deposition that one letter from General Petroleum stated "that the price for oil per barrel was so low that it was no longer paying to keep the well going, something to that effect, or that they were planning to abandon the field because of the low price for oil" and that "the price per barrel of oil was so low that it was no longer profitable to operate the field and the impression that I remember from that letter as [was] the Athens production field was to be abandoned."

Plaintiffs' attempted proof of fraud was weak and unsatisfactory. The trial judge was fully justified in concluding that the evidence was not clear and convincing. There was no evidence that General Petroleum intended to defraud plaintiffs, or that it did not honestly believe the representations claimed to have been made, or that they were in fact false. The grant deed and release terminated plaintiffs' right to royalties. ■ The right of a lessor under a community lease lasts only during continuance of the lease. (*La Laguna*

*Ranch Co.* v. *Dodge,* 18 Cal.2d 132, 136-140 [114 P.2d 351, 135 A.L.R. 546].)

 Since the findings that the deed and release were executed and were not procured by fraud are sufficient to support the judgment, it is not necessary to consider other points made by plaintiffs as to General Petroleum.

Plaintiffs' interest in the lease having been terminated by the execution of the deed and the release, there is no basis on any theory for a judgment against the other defendants.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied November 24, 1952, and appellants' petition for a hearing by the Supreme Court was denied January 5, 1953.