[Civ. No. 25213. Second Dist., Div. Two. Dec. 19, 1961.]

PAULINE CAFFROY et al., Plaintiffs and Appellants, v. STELLA FREMLIN, Defendant and Respondent.

Stephen A. Pace, Jr., Samuel & Lucas and Charles E. Samuel for Plaintiffs and Appellants.

Arthur W. Taylor and James C. Hollingsworth for Defendant and Respondent.

HERNDON, J.—Plaintiffs seek to have their oil rights declared with respect to certain real property conveyed by them to defendant and her now deceased husband. The action was initiated in the court below by filing a complaint for rescission, to establish a constructive trust, for an accounting and for declaratory relief.

Defendant, Stella Fremlin, filed her demurrer challenging each of plaintiffs' three alleged causes of action on several grounds as hereinafter noted. The trial court sustained the general demurrer and allowed plaintiffs 15 days within which to amend. Plaintiffs having elected not to amend, a judgment of dismissal was filed and entered and plaintiffs have appealed from this judgment.

In the first cause of action of their complaint, plaintiffs allege that on March 16, 1936, they were the owners of certain described real property in Ventura County, California, and that "on or about March 16, 1936, the exact date of which is unknown to plaintiffs, R. A. Fremlin, deceased husband of defendant Stella Fremlin, by an agreement in writing signed by the said R. A. Fremlin, agreed to purchase from the plaintiffs herein the [said] real property . . . for the sum of $500.00 in cash *and promised therein to give to plaintiffs herein fifty per cent (50%) of any oil discovered on said real property.*" (Emphasis added.)

It is further alleged that on or about the same date plaintiffs executed a deed conveying the real property to R. A. Fremlin and defendant Stella Fremlin, husband and wife, as joint tenants "and received from the said R. A. Fremlin the sum

of $500.00 in cash''; that the deed was prepared by R. A. Fremlin; that plaintiffs signed the deed ''relying upon the written and oral promises of the said R. A. Fremlin that he would give them fifty per cent (50%) of any oil discovered on said property''; that R. A. Fremlin died ''within several years last past,'' the exact date of his death being unknown to them, ''and the said real property . . . passed to defendant . . . as the surviving joint tenant.''

In the concluding paragraph of the first cause of action, it is alleged that plaintiffs recently learned that defendant had entered into an oil and gas lease with Texaco, Inc., under which the lessee had undertaken to drill for oil on the subject property; that plaintiffs thereupon requested defendant to comply with the alleged agreement of R. A. Fremlin to give them 50 per cent of any oil discovered on the property; that defendant refused to comply with the agreement whereupon plaintiffs demanded rescission of the transfer of real property and offered to return to defendant the $500 consideration, but that defendant refused to return the real property to plaintiffs.

The second cause of action incorporates by reference all the allegations of the first except those of the concluding paragraph as last recited. It states that defendant refuses to recognize that plaintiffs conveyed the property in reliance upon the promises of R. A. Fremlin ''that he would give them fifty per cent (50%) of any oil discovered on said property, and denies that plaintiffs have any interest in the oil on said property''; that there have come into defendant's possession, and in the future there will be coming into the defendant's possession certain rents, issues and profits, 50 per cent of which in equity belong to plaintiffs.

The third cause of action, which is for declaratory relief, incorporates by reference practically all the allegations of the first and alleges that a dispute has arisen, and that an actual controversy exists between plaintiffs and defendant, in that plaintiffs claim that they are entitled to 50 per cent of any oil or revenues from drilling for oil or gas on said real property, whereas, defendant claims that plaintiffs have no interest in the oil on said real property or in the revenues therefrom.

The grounds and the legal theory upon which the general demurrer was sustained by the court below are indicated by memoranda filed by the learned trial judge and made a part of the record herein. The determinative conclusions therein expressed are these: (1) That the alleged promise of the deceased R. A. Fremlin ''to give plaintiffs 50% of any oil dis-

covered on said real property" constituted an attempt to create a contingent future interest which might not vest within the period limited by the rule against perpetuities and was therefore void; and (2) that if the application of the foregoing rule to nullify plaintiffs' contingent future interest gave rise to any cause of action in favor of plaintiffs for rescission, reformation or to establish a constructive trust, such cause of action accrued immediately upon the consummation of the original transaction in 1936, and is necessarily barred by the statute of limitations.

The California rule against perpetuities is now found in Civil Code sections 715.2 and 716. The essence of the rule is in the following part of section 715.2: "No interest in real or personal property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies. . . ." ▮ Although Civil Code section 715.2 was not enacted until 1951, the common-law rule was in effect prior thereto. (*Victory Oil Co.* v. *Hancock Oil Co.*, 125 Cal.App.2d 222, 230 [270 P.2d 604]; *Dallapi* v. *Campbell*, 45 Cal.App.2d 541, 544 [114 P.2d 646].)

▮ The rule against perpetuities applies to real and personal property and to equitable as well as legal estates therein. ▮ But it relates only to vesting and does not apply to vested future estates though possession and enjoyment be postponed indefinitely. (*Williams* v. *Williams*, 73 Cal. 99, 101-102 [14 P. 394]; *Goldtree* v. *Thompson*, 79 Cal. 613, 622, 625 [22 P. 50]; *Victory Oil Co.* v. *Hancock Oil Co.*, supra, 125 Cal.App.2d 222, 230; 38 Cal.Jur.2d § 10, p. 455; Leach, *Perpetuities in a Nutshell*, 51 Harv. L. Rev. 638, 647; 70 C.J.S. § 7, p. 583, § 12, p. 589.)

▮ Under the principles declared in *Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 524-525 [297 P.2d 428], the language here in question, whereby the purchaser promised to give the sellers 50 per cent of any oil discovered on the described real property, is ambiguous and susceptible of more than one reasonable construction. It reasonably might be construed to mean that the parties intended thereby to reserve to the sellers a vested equitable estate entitling them to one-half the right to take oil from the land or to one-half of the proceeds of oil taken therefrom. ▮ The law favors the vesting of interests and will presume every interest to vest unless a contrary intention is clearly manifested. (*Estate of*

182

*Stanford,* 49 Cal.2d 120, 124 [315 P.2d 681]; *Victory Oil Co.* v. *Hancock Oil Co., supra,* 125 Cal.App.2d 222, 230.)

 A reservation may be made through an instrument collateral to the deed (15 Cal.Jur.2d § 183, p. 589; 16 Am.Jur. § 306, p. 612); technical terms are not indispensable (26 C.J.S. § 138, pp. 999-1000) and, where appropriate to effectuation of the intent of the parties, inappropriate words of reservation may be construed to create an exception. (*Boyer* v. *Murphy,* 202 Cal. 23, 32-33 [259 P. 38].)

 The owner of land does not have an absolute title to the oil and gas in place as corporeal real property, but rather has the exclusive right to drill for oil and gas upon his premises. (*LaLaguna Ranch Co.* v. *Dodge,* 18 Cal.2d 132, 135 [114 P.2d 351, 135 A.L.R. 546].) As stated in *Dabney-Johnston Oil Corp.* v. *Walden,* 4 Cal.2d 637 [52 P.2d 237] at page 649: "The owner of land has the exclusive right on his land to drill for and produce oil. This right inhering in the owner by virtue of his title to the land is a valuable right which he may transfer. The right when granted is a *profit à prendre,* a right to remove a part of the substance of the land. A *profit à prendre* is an interest in real property in the nature of an incorporeal hereditament." The owner may convey fractional interests in his right to drill for and produce oil, and such a conveyance may pass a vested property interest. (*LaLaguna Ranch Co.* v. *Dodge, supra,* 18 Cal.2d 132, 137-140.)

 Discovery of oil may be regarded as the event upon which enjoyment and exploitation of vested interests in the oil rights are to commence. With regard to the effect of the word "discovered," as used in the agreement here alleged, the following language of *McNeese* v. *Renner,* 197 Miss. 203 [21 So.2d 7, 8], is pertinent: "The words 'that might hereafter be discovered' in these deeds neither add to nor detract from what the exceptions therein would have meant had they been omitted and the exceptions have been permitted to read as follows: 'The Company hereby reserves and retains an undivided one-fourth interest in all minerals, oil and gas on the land herein described.' Where minerals lie under the surface of land, their presence is usually unknown until discovered by penetration beneath the surface sufficient therefor."

 Since the language of the agreement as alleged is susceptible of more than one reasonable construction, so that extrinsic evidence would be admissible to aid in its interpretation, it is not proper to dispose of the matter upon demurrer.

As stated in *Barlow* v. *Frink*, 171 Cal. 165, 172 [152 P. 290]: "Whether a contract is in any of its terms or provisions ambiguous or uncertain is a matter of determination in the first instance by the trial court. If it is found so to be, it is primarily the duty of the trial court to construe it after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto. Until it is so construed by the trial court with this opportunity afforded to the parties and the accuracy of the determination of the trial court is directly questioned on appeal here, we do not think we should in the first instance undertake to construe it and have our determination of the matter operate as the law of the case on a new trial." This language is quoted in *Television Arts Productions, Inc.* v. *Jerry Fairbanks, Inc.*, 164 Cal.App.2d 842, 849 [331 P.2d 117], with the following words italicized: "*after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto.*" (See also *Walsh* v. *Walsh*, 18 Cal.2d 439, 443 [116 P.2d 62], and *Richter* v. *United Calif. Theatres, Inc.*, 177 Cal.App.2d 126, 131 [1 Cal. Rptr. 895].)

This rule is especially applicable to the third count of the instant complaint, which seeks a declaratory judgment. For it is not necessary for plaintiff to show a right to a favorable declaration. *Photochart* v. *Del Riccio*, 94 Cal.App. 2d 315, 319 [210 P.2d 547], states the law as follows:

"A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties under a written instrument and requests that these rights and duties be adjudged by the court." (*Maguire* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 719, 728 [146 P.2d 673, 151 A.L.R. 1062].) As heretofore stated, the court should not dispose of the case on demurrer merely because the plaintiff is not entitled to a favorable declaration. As stated in the cited case, "The purpose of a declaratory judgment is 'to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation. . . . To hold that a plaintiff on the wrong side of a controversy is not entitled to the security and relief against uncertainty which a declaratory judgment affords would require us to read into the statute a limitation not there present. . . .' "

184

 And the court, having taken jurisdiction over the case, must make a complete disposition of the controversy. (*Osborne* v. *Security Ins. Co.*, 155 Cal.App.2d 201, 204 [318 P.2d 94].) "In an action for declaratory relief, the proper function of the court is to make a full and complete declaration, disposing of all questions of rights, status or other legal relations encountered in construing the instrument before it." (*American Enterprise, Inc.* v. *Van Winkle,* 39 Cal.2d 210, 219 [246 P.2d 935].)

The fact that plaintiffs did not avail themselves of the right to amend is immaterial so far as the cause of action for declaratory relief is concerned, for it is sufficient under the authorities above discussed. The record affirmatively shows that the general demurrer was sustained on the ground that the alleged agreement was in violation of the rule against perpetuities. Defendant makes no point with respect to the various special demurrers and the grounds thereof appear to be relatively unsubstantial.

 Defendant's contentions regarding the necessity of a demand for performance of the agreement and the running of the statute of limitations are not valid. If the agreement is construed as being intended to create a vested interest with only enjoyment postponed, no demand is necessary prior to the discovery of oil. Moreover, the complaint alleges that plaintiffs contacted defendant and "requested that she comply with the terms of the agreement" and that defendant refused to comply.

 The statute of limitation does not begin to run until the cause of action accrues (Code Civ. Proc., § 312), that is to say, when suit may be brought upon it. (*Augustus* v. *Bean,*\* (Cal.App.) 10 Cal.Rptr. 857.) Plaintiffs' allegations with respect to the execution of an oil lease with Texaco, Inc., the receipt by defendant of certain rents, issues and profits under that lease, and defendant's failure to perform under the terms of the agreement indicate the recent accrual of a cause of action if the agreement is construed as having been effective to vest in plaintiffs the rights which they seek to enforce. Whether plaintiff will be entitled to any relief under the first and second counts of her complaint will depend upon the findings of the court with respect to such material

---

\*A hearing was granted by the Supreme Court on April 12, 1961. The final opinion of that court is printed in 56 Cal.2d 270 [14 Cal.Rptr. 641, 363 P.2d 873].

issues of fact as may be presented and upon the construction ultimately placed on the language of the alleged agreement.

There is no merit in defendant's contention that it was necessary for plaintiffs to file a claim against the estate of defendant's deceased husband in order to preserve any rights claimed by them. This action does not seek to establish a claim either through the decedent's estate or against it. Hence, there was no necessity to file or present a creditor's claim.

Defendants rely upon the well settled general rule that one joint tenant, or tenant in common, cannot bind his cotenant by any contract which he may make relating to the common property without the joinder or acquiescence of such cotenant. In the instant case, however, it is alleged that the agreement was made before defendant acquired her joint tenancy interest. It is alleged that defendant took under a deed prepared by her husband and vesting a joint interest in her, and that the consideration for the conveyance of the property was paid by the deceased, R. A. Fremlin. These facts raise a presumption of a gift to defendant of the interest which was vested in her. (26 Cal.Jur.2d, § 7, p. 106.) Therefore, she took title subject to whatever equitable interest had been vested in plaintiffs contemporaneously with the execution of the deed to her husband and herself. (*Atwood* v. *Elwood*, 132 Cal.App. 2d 761, 770 [283 P.2d 43] ; *Jud Whitehead Heater Co.* v. *Obler*, 111 Cal.App.2d 861, 873 [245 P.2d 608].)

The judgment is reversed with directions to overrule the demurrer.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied January 16, 1962, and respondent's petition for a hearing by the Supreme Court was denied February 14, 1962.