## LONABAUGH v. MIDWEST REFINING CO.

(District Court, D. Wyoming. December 21, 1922.)

No. 1294.

1. **Mines and minerals ⬅➡5—Bill for accounting held maintainable against assignee of lease for interest on moneys not paid over.**

   Where holder of oil and gas lease from the state, who was acting as trustee for plaintiff, made an assignment reserving royalties, and defendant, claiming under the assignment, recognized plaintiff's interest by making partial payments, but withheld a large part of plaintiff's portion of the proceeds for several years, and plaintiff did not know the amount withheld or the amount of interest received thereon, he could sue in equity for an accounting with respect to the interest so received and not paid over, especially as there was apparently a fiduciary relationship.

2. **Trusts ⬅➡208—One claiming under assignment of lease made by trustee for plaintiff held to stand in same relation to plaintiff as if he made assignment.**

   Where the holder of an oil and gas lease, acting as trustee for plaintiff, assigned the lease, reserving certain royalties, and after a subsequent assignment to defendant it recognized plaintiff's interest by making partial payments, plaintiff and defendant stood in the same relationship as though the original lease had been granted to plaintiff and the assignment made direct by him to defendant.

3. **Mines and minerals ⬅➡5—Assignee held to stand in trust relation in seeking renewal of lease from state, and bound to use utmost good faith.**

   Where assignment of oil and gas lease from the state provided that it should cover any renewal thereof secured by either of the parties, one claiming under the assignment, if it dealt with the state at all, was bound to use its best efforts to secure a renewal, and was in the position of a trustee toward the assignor to the extent, at least, that the assignor had a right to rely on its utmost good faith in securing a renewal, and was not relieved of its obligation as trustee merely because the state would not renew the lease, but gave an operating agreement largely partaking of the nature of a lease.

4. **Mines and minerals ⬅➡5—Provision of assignment that renewal should be covered thereby held applicable to operating agreement obtained from state on termination of lease.**

   Where oil and gas lease from the state and operating agreement made to begin on termination of the lease were between the same parties, affected the same property, provided for physical operation in the same manner, and were in other respects substantially alike, the fact that the lease required payment of a royalty, while the operating agreement required payment of a stipulated percentage of the proceeds of sales, and made the operator the agent of the state, *held* not to render inapplicable a provision in an assignment of the lease that it should cover any renewal secured by either party.

In Equity. Suit by E. E. Lonabaugh against the Midwest Refining Company. On motions to dismiss. Motions overruled and denied.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E. E. Lonabaugh, of Sheridan, Wyo., and E. E. Enterline, of Denver, Colo., for plaintiff.

A. C. Campbell, of Cheyenne, Wyo., and Frederick D. Anderson, of Denver, Colo., for defendant.

KENNEDY, District Judge. The above-entitled cause is a suit in equity by which the plaintiff seeks an accounting for alleged collections of interest accruing in consequence of a certain oil and gas lease executed by the state of Wyoming, through its board of school land commissioners, to one Hilliard S. Ridgely, and to impress a trust of a one-twentieth interest in a subsequent agreement made by the state of Wyoming with the defendant, alleged to be in the nature of a renewal of the original lease, covering lands in what is known as the Grass Creek oil field, in the county of Hot Springs, in the state and district of Wyoming.

The bill of complaint is challenged by motions to dismiss, as being insufficient upon its face to constitute any cause of action against the defendant, and said motions divide the prayer for relief into two divisions, as to the first cause of action growing out of the original lease, and the second growing out of the subsequent agreement. For the purpose of considering the legal propositions raised by the motions to dismiss, the facts set forth in the bill of complaint may be said to be substantially as follows:

On the 24th day of May, 1916, the state of Wyoming made, executed, and delivered to one Hilliard S. Ridgely an oil and gas lease covering the land in controversy for a period of five years. Thereafter and on the same date the lessee assigned and transferred the lease to the Greybull Refining Company, a corporation, which in turn assigned the same to the defendant, the Midwest Refining Company. This defendant thereafter proceeded under said lease and by virtue of said assignments to develop and operate the same, and at the time of the expiration of the lease it was in possession of said premises. It further appears that the said assignments were recognized and approved by the state of Wyoming, as required by the statutes and rules of its land board.

Attached to the bill are copies of the original lease, the assignments thereof, and the subsequent agreement between the state and the defendant. In the assignment from the said Ridgely to the Greybull Refining Company appears the following clause relating to renewal:

"It is expressly agreed and understood that this contract of assignment covers and is to be extended to and have full operation over any and all renewals of the lease between the state of Wyoming and the party of the second part, heretofore referred to and made a part hereof, in the event any renewal thereof is secured by either of the parties hereto."

The bill further avers that Ridgely, in all the acts set forth in the petition, was acting for himself and also as trustee for the plaintiff, and that plaintiff became the owner of the interest in said lease heretofore mentioned under the contract of assignment by Ridgely to the Greybull Refining Company, and that the defendant, in its operation of the lands under the lease, recognized the said interest of plaintiff by

making to him partial payments during the continuance of the lease. It is further set forth that the said Ridgely had disposed of all his interest in the lease prior to the commencement of the suit. It also appears that, before the expiration of the original lease the defendant, the Midwest Refining Company, made application for a renewal of the aforesaid lease, and that instead of a lease the state entered into a contract with the defendant, in the nature of an operating agreement, by which the defendant became the agent of the state in carrying on operations upon the premises. A comparison of the original lease and this agreement will be discussed later, in the matter of considering the so-called renewal clause in the Ridgely assignment.

It is alleged in the bill that the defendant under the original lease retained in its possession for a period of about five years plaintiff's portion of the proceeds accruing from the operation under the lease, amounting to the large sum of approximately $75,000, and collected interest upon said sums during said period, for which the defendant failed and refused to account and to pay over to plaintiff. The two seeming divisions of the complaint may therefore be considered as a prayer for accounting under the original lease and a prayer to have the subsequent agreement construed as a renewal of the original lease and to fasten a trust in favor of the plaintiff thereon.

[1] The principal challenge of defendant to the so-called first cause of action is that it shows upon its face to be an action at law, and that no sufficient ground is alleged to justify a court of equity in ordering an accounting, inasmuch as there appears to be no complication of accounts or a fiduciary relationship. This court is of the opinion that the statements of the bill in respect to this cause of action sufficiently allege a lack of knowledge on the part of plaintiff as to the amount withheld by defendant, and as to the interest received by defendant during said period, to lay the basis for a proceeding in equity to require the defendant to account to plaintiff. There also seems to have been a fiduciary relationship existing between the defendant and plaintiff, which the defendant assumed by taking over the original lease under assignment, and which interest of plaintiff therein the defendant subsequently recognized by paying over to plaintiff portions accruing from operations under the lease. It would be difficult for plaintiff to set forth with a degree of accuracy the interest alleged to have been received by defendant from various sources, and therefore, as affecting the proportionate interest upon the proceeds, a bill in equity would seem the proper method to arrive at the amount which might be due plaintiff through an accounting, and to require defendant to present its defense to the claim.

As to the so-called second division of the complaint, a more difficult problem is encountered. The chief contention of counsel for plaintiff is that the circumstances established by the instruments set forth a fiduciary relationship, bringing the defendant into the position of a trustee for the plaintiff in connection with the assumption of a contractual relationship with the state after the expiration of the original lease, and that in this view of defendant's situation the defendant must be held to a strict degree of accountability. The defendant, on

the other hand, maintains that by making its application for a renewal of the lease, which was subsequently denied by the state, it discharged its full duty to plaintiff, and became relieved of any fiduciary relationship with the plaintiff, and that the subsequent contract between it and the state should be analyzed strictly in its legal sense as being or not being a renewal of the original lease. It is the opinion of the court that the instruments (the lease and agreement) should be examined in the light of the relationship between the parties, and therefore a consideration of this relationship should be first in order.

[2, 3] It is evident from the averments of the bill that the contents of the assignments, the acceptance of the assignments by the state, and the recognition of plaintiff's interest in the original lease by defendant, bring plaintiff and defendant into the same relationship as though the original lease had been granted to plaintiff and the assignment made direct by plaintiff to defendant, through which process plaintiff retained or contracted for the interest which he now claims. Under such circumstances it would have been, and therefore was, incumbent upon the defendant to use its best efforts, if it dealt at all with the state in connection with the property, to secure a renewal of the lease. The agreement which defendant entered into with the state of Wyoming for operating the premises shows that such an application for renewal was made by the defendant and denied by the state. The question is: Did this leave the defendant free to contract with relation to the lands through some other form of agreement than that denominated a lease?

In answering this question, it should be borne in mind that the defendant was fully cognizant of the interest of the plaintiff in the renewal, and that it might attach if such renewal were secured. The plaintiff had the right to rely upon the utmost good faith of the defendant in securing this renewal, and to this extent, at least, the defendant was in the position of a trustee toward the plaintiff. It does not appear that the plaintiff was present or notified of any hearing upon defendant's application for the renewal. Under these circumstances, as before stated, the defendant, in dealing for the lands with the state, was in duty bound to protect the interest of the plaintiff so far as it could. It was in a position to say, when the state denied the application for renewal and proposed a working agreement, that it refused to accept such an agreement, if it were not of such a nature as to permit it (the defendant) to financially respond to any rights which the plaintiff might have under a renewal clause. The mere fact that the state, under the circumstances, decided that it would not renew the lease, but would give a working contract to the defendant, partaking in many instances of the same general elements of the original lease, cannot be held to relieve the defendant of its obligation as a trustee for the plaintiff in the premises. If such a construction should obtain, it would leave the door open for the defendant to secretly urge its influences toward the securing of a change in the form of contract for the purpose of relieving it of the burden of plaintiff's claim, or make it possible for the party having in its power the right to grant the lease to arbitrarily, and for the purpose of defeating plaintiff's claim to an interest in a renewal, change the form of its contractual

relationship with the defendant. These are simply mentioned as possibilities which might occur, if the defendant were not held to a strict accountability, and if the two instruments, to wit, the original lease and the subsequent agreement, were not analyzed and construed in the light of the relationship which existed between the parties.

Respecting a fiduciary relationship such as appears from the complaint in this proceeding, counsel for plaintiff has cited a case with a different combination of facts and circumstances, but which has a statement of the abstract principle of law involved, and in which Judge Sanborn, of this circuit, uses the following language:

"For reasons of public policy, founded in a profound knowledge of the human intellect and of the motives that inspire the actions of men, the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning or interest in the business or property of his correlate, from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one ignores or violates this prohibition, the law charges the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former all commission or compensation for his services. This inexorable principle of the law is not based upon, nor conditioned by, the respective interests or powers of the parties to the relation, the times when that relation commences or terminates, or the injury or damage which the betrayal of the confidence given entails. It rests upon a broader foundation, upon that sagacious public policy which, for the purpose of removing all temptation, removes all possibility that a trustee may derive profit from the subject-matter of his trust, so that one whose confidence has been betrayed may enforce the trust which arises under this rule of law although he has sustained no damage, although the confidential relationship has terminated before the trust was betrayed, although he had no legal or equitable interest in the property, and although his correlate who acquired it had no joint interest in or discretionary power over it. The only indispensable elements of a good cause of action to enforce such a trust are the fiduciary relation and the use by one of the parties to it of the knowledge or the interest he acquired through it to prevent the other from accomplishing the purpose of the relation. And, within the prohibition of this rule of law, every relation in which the duty of fidelity to each other is imposed upon the parties by the established rules of law is a relation of trust and confidence. The relation of trustee and cestui que trust, principal and agent, client and attorney, employer and employee, who through the employment gains either an interest in or a knowledge of the property or business of his master, are striking and familiar illustrations of the relation. From the agreement which underlies and conditions these fiduciary relations, the law both implies a contract and imposes a duty that the servant shall be faithful to his master, the attorney to his client, the agent to his principal, the trustee to his cestui que trust, that each shall work and act with an eye single to the interest of his correlate, and that no one of them shall use the interest or knowledge which he acquires through the relation so as to defeat or hinder the other party to it in accomplishing any of the purposes for which it was created." Trice v. Comstock, 121 Fed. 620, 57 C. C. A. 646, 61 L. R. A. 176.

The two instruments, if the conclusion of the court be correct as to the fiduciary relationship between the parties as affected by the renewal clause in the assignment, must therefore, as before stated, be analyzed and construed in the light of this relationship.

Counsel for defendant has earnestly argued that the operating agreement is not, and should not be construed as being, either in form or in substance, a renewal of the original lease, and has cited many authorities sustaining this contention. These cases, however, have generally

arisen in the matter of the construction of an instrument as between parties to that instrument, and not as affecting the rights of a cestui que trust. In one instance, such contractual relation should be construed in the strictly legal sense, in that, having entered into the contract, the parties were presumed to know and realize its full meaning. In the other instance, the contractual relation must be construed from an equitable standpoint, as protecting the rights of a party who has relied upon his trustee, and in such a case the rigid rules of law as to interpretation manifestly should not be indulged.

[4] Instead of an examination of the two instruments as to the respects in which they are dissimilar, this court believes that they should be scrutinized in regard to the respects in which they are similar. It will be seen in such an examination that both instruments are between the same parties; that they affect the same property and provide for the physical operation in identically the same manner; that the date when the lease ends and the operating agreement begins makes the contractual relation continuous; that both instruments provide generally for protection, preservation, and approved methods of operation; that both instruments provide for reports to be made to the state by the operator in substantially the same manner; and that there are other instances in which there are substantially the same requirements in regard to the operation of the property, which the court will not discuss at this time. The outstanding dissimilarity in the two instruments is in the fact that the lease required the lessee to pay a royalty to the state upon the oil produced, while the operating agreement requires the operator to pay a stipulated percentage of the proceeds from the sale of the oil produced from the property. The fact that the agreement provides that the defendant shall be the agent of the state in operating the property is immaterial, inasmuch as the only payment received by the defendant for the operation is from a portion of the oil produced in the operation by the defendant itself, and the additional element that the state shall in no way be obligated to the defendant for the payment of any money to it, as agent. Certainly there can be no substantial distinction in this particular between the lease, which provides the payment of a percentage of the oil produced, denominated as a royalty, and the agreement, which provides a percentage to be paid the state after deduction of the expense of operation as agent, but omitting the term "royalty."

These circumstances appeal to the court as persuasive of giving the plaintiff a right to the trial of his cause upon the merits. It may be that defenses will develop from which all of these instruments should be construed in a different light than they are at this stage of the proceeding, in simply sustaining plaintiff's cause of action upon the face of the bill itself. The court has not considered it necessary to construe the constitutional or statutory provisions under which the board might have acted, or to find under what particular clause of the Constitution or statute it did act, or whether it had a right to grant upon lands of this character anything other than a lease, for the reason that I take it to be the duty of courts generally to construe with great liberality constitutional and statutory provisions, with a view of sus-

taining the administrative and quasi judicial acts of governmental bodies of this character. In addition, the view which the court has taken would seem to make this point rather immaterial upon this particular hearing.

For the reasons stated, the motions to dismiss will be overruled and denied, and defendant given 20 days within which to answer or otherwise plead.