[Civ. No. 2636.   Fourth Dist.—April 8, 1941.]

HEASTON & GLIMPSE, LTD. (a Corporation), Respondent, v. WEST AMERICAN OIL COMPANY (a Corporation), Appellant.

Hanna & Morton for Appellant.

Cameron & Perkins for Respondent.

CONWAY, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff in an equitable action for an accounting. In the year 1929, the West American Oil Company, a corporation, the predecessor in interest of the present West American Oil Company, a corporation, defendant herein, and having the same president and controlled by practically the same officers and stockholders, was engaged in drilling an oil well in Huntington Beach, California. Plaintiff corporation owned and operated a machine shop and was engaged in selling bits and doing machine shop work for oil well drilling operations. The former West American Oil Company was short of the necessary funds to secure bits and pay for services in connection with machine shop work in its proposed drilling operations and the officers of these two corporations talked over a deal which was satisfactory to both and which finally culminated in a written contract between the parties which was evidenced by the acceptance of an offer contained in a letter written to the plaintiff by the former West American Oil Company. The letter confirmed the oral agreement to assign three per cent of the gross production of the well until such time as the debt was paid in full, at which time the percentage assigned would revert to the assignor.

In conformity with the promise contained in the letter to assign a three per cent interest in the production of the well, the former West American Oil Company, on December 30, 1929, executed and delivered to plaintiff an instrument entitled "ASSIGNMENT OF OIL AND GAS ROYALTY," which assignment was recorded in the office of the County Recorder of Orange County December 6, 1930. The assignment set over to respondent a royalty interest of three per cent of the "gross total of oil and gas", and further provided that the assignor might pay the posted market price for oil and gas produced in lieu of delivery in kind. This assignment was acknowledged by H. S. Kohlbush, president, and H. R. Gimbal, secretary of West American Oil Company. It will be noted that it carries a royalty interest of three per cent of the gross total of oil and *gas* produced from the well,

and contains nothing to indicate the right of the oil company to deduct operating expenses. Plaintiff admittedly furnished bits and performed machine shop services and rendered its bill in the sum of $4,713.98. This assignment was pledged by the assignee to various creditors and the well became a producer. The West American Oil Company paid the plaintiff and its assignees various sums which totaled $3,819.65, leaving a balance due under the contract of $894.33. All of these payments were made from the three per cent production of *oil* only and also after certain operating expenses were deducted, and no payments were ever made for the *gas* produced.

The evidence shows that in the month of January, 1938, plaintiff discovered for the first time that these royalty payments did not include any percentage of the gas produced from the well, and were based upon a deduction for operating expenses. Plaintiff immediately demanded an accounting, claiming a right to the payment of three per cent of the gas produced free and clear of any operating expenses. The accounting was refused and this action was seasonably commenced. The present defendant, West American Oil Company, was incorporated July 7, 1933, and when incorporated it was named the Equitable Oil Company. On or about February 19, 1934, its name was again changed from the Equitable Oil Company to the West American Oil Company. The former West American Oil Company changed its name to W. A. Oil Company and was dissolved on or about March 22, 1937. The former West American Oil Company transferred the lease upon the property to the Equitable Oil Company, and it in turn transferred the same to the present West American Oil Company, which held and owned said lease and operated the well. The court held that the present West American Oil Company became such owner and assignee of said lease with full knowledge and notice of the existence of plaintiff's royalty interest and agreement. These various changes in corporate names apparently were made for "tax purposes".

The amount of the claim is not in controversy and it is not denied that all payments made under the royalty assignment were based upon production of *oil* only. It is also admitted that if plaintiff had received its three per cent interest, without operating deductions, of both the *oil* and *gas,*

produced, the debt agreed upon would have been liquidated more than four years prior to the time of the filing of the original complaint. The trial court rendered judgment in favor of the plaintiff in the sum of $894.33 with interest and the defendant has appealed from the judgment.

Appellant and respondent agree that the contractual relationship the parties bore to each other was that of principal and agent. By the terms of the agreement, which the court held to be unmodified, the appellant who was the agent of the respondent was obligated, as a trustee, to pay three per cent of the monthly gross proceeds of the well on both oil and gas until respondent's claim had been paid in full. Appellant contends that the assignment amounted, under the doctrine of potential possession, to a present sale to respondent of a three per cent of the oil and *gas* produced from the well and accordingly, since admittedly three per cent of the oil and *gas* would have liquidated the entire bill more than four years prior to the filing of the complaint, the cause of action was therefore barred by a limitation of time. He cites the case of *Western Oil & Refining Co.* v. *Venago Oil Corp.*, 218 Cal. 733, 739 [24 Pac. (2d) 971, 88 A. L. R. 1271], where the court says:

"The operating lessee who has acquired the right by contract to enter upon land and prospect for oil and gas has potential possession of all oil and gas which may be produced during the continuance of the lease, and this is so notwithstanding the oil lease may provide for forfeiture in the event the lessee shall fail to drill a well within a designated time, or fail to discover oil. Leases of farm lands commonly provide for forfeiture for nonpayment of rent or other breaches of the lease, yet such provisions have never been thought to render the doctrine of potential possession inapplicable to crops grown while the lease is in full force and effect, and has not been forfeited or terminated. It follows that when, as in the instant case, the operating lessee has assigned percentages of the oil, gas and other substances to be produced, saved and sold *under his lease,* he cannot defeat the assignment by voluntary transfer to another of his right of entry to prospect for and recover oil. Title to an undivided interest in the oil produced will vest in the holders of percentage interests in like manner as if the oil had been produced by the original lessee."

Appellant contends, on the other hand, that if the doctrine of potential possession is inapplicable then section 1725 of our Civil Code would apply and the royalty assignment should be construed as an agreement to sell *when* the oil and gas came into existence and consequently he contends respondent's right to receive money, not in kind, in either contingency, is barred. In this respect he cites the ordinary case of an installment contract. But in none of those cases does it appear that the obligor acted as a trustee for the party to whom payments were due. In the present case we are satisfied that the agreement constitutes the West American Oil Company a trustee of the funds derived from the sale of the oil and *gas* and respondent was entitled to rely upon the belief that its trustee was faithfully performing its services under the contract until the contrary appeared. We believe that the assignment and the acceptance of it constituted an express trust and that the statute of limitations did not commence to run until respondent had knowledge of the repudiation of its terms and a violation thereof by the trustee. This doctrine is set forth in the case of *Allsopp* v. *Joshua Hendy Mach. Wks.*, 5 Cal. App. 228 [90 Pac. 39], where the court said (p. 234):

"But again, there was an express trust created by the transaction between the parties, and the statute of limitations would not begin to run until there was brought home to plaintiff knowledge of the repudiation of the trust or the violation of its terms on the part of defendant. . . . The position of the agent is that of a trustee, and claims against him are governed by a rule similar to that controlling trustees."

In the case of *San Pedro Lumber Co.* v. *Reynolds*, 121 Cal. 74 [53 Pac. 410], the court said, at page 91:

"The statute of limitations cannot be successfully invoked. Reynolds was acting in a fiduciary capacity. Such of his acts as resulted in loss to the corporation were concealed breaches of trust. The statute of limitations would not begin to run in his favor, so as to enable him to escape the results of an accounting, until after knowledge by his principal of his derelictions. In this case the accounting was promptly demanded after discovery."

The evidence shows that in March of 1938, Mr. Heaston, president of respondent corporation, visited the well and discovered that it was producing a large amount of gas, and

was informed by a man who was reading the gas meter installed in the well that three per cent of the gas was more than enough to have paid the entire claim. Thereupon Mr. Heaston contacted Mr. Kohlbush, who was the president of the *former* and the *present* West American Oil Company, and complained about the mistake and also complained about the deduction for operating costs, and demanded an accounting in full. Mr. Heaston testified that he said to Mr. Kohlbush: "If there is a mistake there now, where you have not been paying me for the gas, and have been charging for operating costs, you undoubtedly got enough money accumulated to pay me off in full," and that Mr. Kohlbush answered: "Yes, if you get away with it." That was the end of the conversation.

The findings of the trial court relative to the date of the discovery by respondent of the nonperformance of the terms of the assignment are amply supported by the evidence.

■ Appellant claims that it was a transferee of the lease and assumed the liability to pay respondent only from the oil produced, and challenges the ninth finding of the trial court which is as follows:

"That the said Equitable Oil Company, and the present West American Oil Company each in turn were assignee and transferee of said lease, and had transferred to them in turn all assets of the former West American Oil Company, all done with knowledge of plaintiff's said royalty agreement."

The court found that there was no change in the terms of the contractual relationship of the parties and respondent takes the position that appellant both by implication and as a matter of equity expressly assumed the obligations of the former West American Oil Company. As we have heretofore pointed out, the royalty assignment was recorded and both West American Oil Company corporations had the same president, active manager and practically the same stockholders, and at the time of trial the carbon copy of the assignment was produced by the present appellant. There is sufficient substantial evidence in the record from which the trial court was justified in drawing the inference that the present West American Oil Company was not alone obligated to perform under the assignment which had been made by the former West American Oil Company, but that appellant took the lease with notice of this assignment and cannot equitably refuse its performance. (*Richardson* v. *Callahan*, 213 Cal.

683 [3 Pac. (2d) 927].) Mr. Kohlbush, who was president of both of the West American Oil Companies, testified that when the oil well was finally sold to the Kiesau Petroleum Company the sale was made subject to the contingent agreement with Heaston & Glimpse "which we agreed to take care of the same as if we had not sold the well".

Also, Mr. Kohlbush, who originally negotiated the agreement, testified that after the agreement was made there was no change made in it. In addition to the statement by President Kohlbush that no change had ever been made in the written agreement between the parties, Mr. Heaston, president of the respondent corporation, testified that the agreement was never modified in any respect and that no conversation in reference to any modification had ever occurred.

Lastly, appellant contends that the trial court erred in granting leave to respondent to file the amended complaint upon which this action was tried. The transcript shows that at the time this action came on for trial on the original complaint, respondent moved the court for an order permitting it to file an amended complaint alleging the proper date of incorporation of the present West American Oil Company, and also alleging that the present appellant was a transferee with notice. The motion was granted and the matter was continued. No showing has been made that any damage has resulted from the court's ruling. We feel that under the circumstances shown in the record of this case that the trial court might reasonably have concluded that the change of corporate names, without in any manner affecting the corporate structure, might have confused counsel for respondent, and we feel that the interest of justice was served by permitting the amendment.

Appellant cites numerous cases where amendments were refused and on appeal it was held that no reversible error was committed. It is, of course, elementary that the right to amend a pleading rests in the sound discretion of the trial judge and each particular case must be decided upon its own particular facts. Here the cause of action was not changed in any respect and we are unable to determine in what respect appellant suffered any damage by reason of the amendment.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.