578

## McDERMOTT v. BLACKNER et al.
### Civil Action No. 3090.

United States District Court
D. Wyoming.
Dec. 6, 1948.
Judgment Affirmed Aug. 11, 1949.
See 176 F.2d 498.

Albert D. Walton, of Cheyenne, Wyo., for plaintiff.

Knox Patterson and John S. Boyden, both of Salt Lake City, Utah, and Robert G. Clark, of Cheyenne, Wyo., for defendants.

KENNEDY, District Judge.

This action has been instituted by plaintiff for affirmative relief in connection with an oil and gas lease issued by the United States Government to the defendant A. E. Blackner. With the allegations of an amended complaint the defendants joined issue and after a pre-trial conference the case was submitted by stipulation upon an agreed statements of facts without oral argument, upon trial briefs. The conditions of the stipulation now having been fulfilled, the matter is before the Court for consideration.

Before proceeding to the merits of the controversy, it will be well to dispose of a motion on behalf of plaintiff to amend his complaint to conform to the proofs in the case seeking to impress a trust for the benefit of plaintiff upon the lease presently issued to the defendant A. E. Blackner. Having considered the matters contained in the stipulation as to facts and the relationship of the parties from the beginning up to the issuance of said lease, it seems to be pertinent and proper that the motion for the amendment to the amended complaint, whether legally required or not, should be sustained and it will be so ordered.

The other matter relates to the certain stipulated facts which in certain instances both the plaintiff and the defendant object to upon the ground of incompetency and irrelevancy as having no bearing upon the issues here framed. Inasmuch as those issues relate to a claimed fiduciary relationship growing out of the circumstances surrounding a former lease upon the same premises by the United States to the defendant and an operating agreement based thereon between plaintiff and defendant, it would appear all facts bearing upon such fiduciary relationship should be competent and relevant and therefore admis-

sible as tending to establish the fundamental facts concerning that issue. Therefore the objections to the submitted facts as to their competency and relevancy will be overruled.

On account of the extensive nature of all the proceedings, both in the United States Land Office and in the Court, no attempt will be made in this memorandum to more than outline the views which the court has as to the manner in which the litigation should be disposed of, leaving it to the ingenuity of counsel to prepare such findings, conclusions and a judgment as may be the appropriate fundamental basis for carrying the decision of the Court into legal effect.

Sometime in May 1939, the plaintiff having knowledge of some Government land which was to become available for lease for the development of its petroleum content, went to the defendant A. E. Blackner in Salt Lake City, with whom he had several months' previous acquaintance, and proposed to the defendant that if he were interested in procuring a lease upon these lands, he, the plaintiff, would assist him in preparing an application and would advance the filing fee and transmit the same to the appropriate Federal authorities and that if the same should be granted, the defendant would thereupon enter into an operating agreement with the plaintiff by which the plaintiff would have control of said lands for development purposes and that out of any production which might result the defendant would be entitled to 1½% overriding royalty. The lease was subsequently awarded to the defendant and thereafter the operating agreement entered into between the defendants A. E. Blackner and Essie M. Blackner and the plaintiff. Sometime after the lease and operating agreement had been consummated, the defendant sought to oppose the recognition of the operating agreement by the Interior Department and subsequently commenced an action in this Court to have the same annulled. This action on the part of the defendant retarded and interfered with the efforts of the plaintiff to secure any affirmative action for development under the operating agreement, but subsequently on the failure of the defendant to carry out any

affimative effort in the Interior Department to sustain the protests filed against the recognition of such operating agreement, it was eventually approved. The plaintiff was able after a considerable length of time to interest one of the larger operating oil companys in the project and an option agreement was entered into between the plaintiff and Sinclair-Wyoming Oil Company. A portion of the land was exploited and a producing well thereon developed. Nothing further occurred in the matter of the development of the other lands included in the lease and it was about to expire by the limitation of its terms when both the plaintiff and the defendant showed new energy in connection with securing a renewal thereof. New revisions of law and regulations intervened which would seem to have no practical bearing upon the issues in the case at bar. The plaintiff filed application for a renewal of the lease either to secure it for himself or under the rights which he assumed to exist by virtue of the operating agreement and the defendant also filed an application for the renewal of the lease. Likewise the attorney for the plaintiff filed a separate application. The applications of both the plaintiff and his attorney were rejected and finally a lease was granted to the defendant upon the basis of his preferential right by virtue of his having held the prior lease on the same premises but with a portion of the land covered by the lease eliminated on account of the fact that it had been added to proven oil territory and therefore not susceptible to the terms of the lease sought by the parties. Before, or about the time the subsequent lease was finally granted, the defendant executed an operating or option agreement with the defendant Richfield Oil Company, a Montana Corporation, which now claims the right to possession and the right to have said operating agreement recognized by the Interior Department, to the approval of which operating agreement the plaintiff protested. As a result of the proceedings in the Interior Department, it was finally ruled that the matter of any approval of the operating agreement between defendant and the Richfield Oil Company would be suspended for a period of forty days within which

either party might file an action in a Court of competent jurisdiction to obtain a ruling on the respective rights of the plaintiff and defendants in the premises, and within the time so fixed this action was brought by the plaintiff.

Incidental to the relationship which existed between the plaintiff and defendant in securing the original lease is the evidence concerning the various inter-related acts of both plaintiff and defendant in promoting the development of the leased land in which the plaintiff advanced money for not only the filing of the application but the rental which was required by the Government, and combined their efforts to incorporate a company which would develop the property under the lease and operating agreement for their mutual benefit. But an estrangement grew up between plaintiff and defendant which became quite bitter and there was no longer any affirmative cooperation between the two in attempting to effectuate any mutual benefit which might flow from their original combined efforts but rather seemed to take the form of an effort on the part of each to deprive the other of the benefits of any results which might be achieved through the development of the property.

No attempt will be made to outline all of the evidence which seemed to disclose the various acts of the plaintiff and defendant from the time that they first became associated in securing the lease up to the time the litigation here was commenced. An action was brought by the defendant against the plaintiff in this Court, known as 2831 Civil, as early as June 1942, in which the defendant here sought to cancel and nullify the operating agreement between them based upon the original lease. After a trial and full hearing upon the issues joined, this Court found, and a judgment was entered accordingly, that the plaintiff had not forfeited his rights under the operating agreement between the parties and it was therefore in full force and effect. From this judgment no appeal was taken and many of the facts under the stipulation filed in this case were introduced as evidence in the case above mentioned.

It may be said in addition to what has been heretofore said that the operating agreement between the plaintiff and the defendant by its terms applied to any lease or leases granted pursuant to said application, the applicable laws and regulations, and this contract, throughout the term of said application, lease, or leases, or any renewal or extension thereof.

Much has been said in the briefs about the point as to whether the present lease is a renewal or an extension of the old lease or a new lease. As I view the issue tendered by the complaint, it is not necessary to discuss this point at length or to determine the precise character of the last lease, as will appear from what is to follow. After all, the ultimate question to be decided is what, if any, equitable interest in the new lease has been established by the evidence entitling plaintiff to relief here. My analysis of the evidence presented leads me to the conclusion that starting at the beginning, the plaintiff and defendant then became partners or co-adventurers in securing the lease and developing it for their mutual benefit. Certainly the stipulated evidence, as well as the evidence in the case before the Court in 2831 Civil, clearly demonstrates that the principal defendant here had no knowledge or conception of the Government land being available for lease until it was brought to his attention by the plaintiff. Had this not occurred, it is difficult to imagine how the principal defendant could ever have had an interest in the lease and but for the affirmative acts of plaintiff in connection with it and the payment of the original lease requirements, this defendant could not have benefited. The operating agreement between plaintiff and defendant was an integral part in the plan of securing the original lease, as shown by the record.

■ The defendant complains that the plaintiff at various times tried to get the lease in his own name and free from any interest of the defendant and therefore did not come into the Court of equity with clean hands and should be deprived of any right, title and interest in the new lease. But, on the other hand, the defendant performed acts which were not entirely in

accordance with the rules of equity in attempting to repudiate and annul the operating agreement and ignoring any rights of the plaintiff by executing an operating agreement under the subsequent lease with a third party. I find no evidence which seems to justify a conclusion that the plaintiff committed any acts which would forfeit his rights under the operating agreement in connection with the original lease when compared with the acts of defendant and it is quite certain that he did nothing of an affirmative nature to relinquish that right or to bring about a voluntary abandonment. In fact, there is nothing to justify the conclusion that either the plaintiff or the defendant abandoned any of their rights under the contractual relationship theretofore assumed but, like two bulldogs, they are still fighting over the same bone, which nullifies any idea of abandonment by either. Had the plaintiff or his attorney succeeded in securing a lease upon the premises, doubtless a Court of equity would be open to defendant to enforce the same equitable rights which the plaintiff here seeks.

■ What principle of law should be applied to the situation? Counsel for plaintiff has called the attention of the Court to a former decision of this Court in Lonabaugh v. Midwest Refining Co., 285 F. 63, where the principle of fiduciary relationship was promulgated in a case which has facts somewhat similar to those in the case at bar. There the aggrieved party had an interest in a lease from the State of Wyoming which the lessee was obligated to perpetuate if possible. Application was made but a renewal was rejected and instead the State granted to the lessee an operating agreement covering the same property. The lessee sought to avoid any obligations to the plaintiff by virtue of the original lease. To this situation the Court applied the broad principle of an equitable trust for plaintiff's protection. While the underlying facts are somewhat different in the case at bar, I see no reason why the principle is not applicable here. It seems to me that from the very time the plaintiff and defendant became interested in a lease from the Government upon this land, they became partners or co-adventurers in

the development of it for their mutual benefit and for either to say to the other, or to take any action, attempting to defeat the other in securing a realization of those original designs and promises is to ignore the principles of equity which were discussed in the case cited and likewise laid down by the Supreme Court of the State of Wyoming in Wyoming-Indiana Oil & Gas Co. v. Weston et al., 43 Wyo. 526, 7 P.2d 206, 80 A.L.R. 1037. The reason for the rule is amply discussed in those cases and will not be reiterated here. This principle will therefore be applied in the case at bar in that it will be adjudged that the plaintiff, by virtue of his said operating agreement with the defendant under the original lease, has an interest in any new lease issued by the United States to the defendant upon all or any portion of the same lands upon which the original lease was issued, which will redound to the benefit of any of the privies of plaintiff who became such during the life of the original lease and operating agreement and to the exclusion of any interest granted by the defendant Blackner to the Richfield Oil Company which in any way conflicts with the rights of the plaintiff and his privies in such new lease. The Court in no sense attempts to regulate the Department of the Interior in the matter of the form of the lease which it may grant in the premises. The prerogatives of that Department will not be interfered with in any way.

In this view, it will be seen that whether the last lease granted is a renewal or an extension of the original lease or a new lease becomes immaterial for the reason that the rights of the plaintiff are vested in an equitable situation by virtue of a fiduciary relationship between plaintiff and defendant, which applies to any lease upon the same property granted to the defendant by reason of his preferential rights under the original lease to which the plaintiff's rights became attached by virtue of the circumstances which brought them into being.

Upon counsel for plaintiff will devolve the duty of formulating findings, conclusions and a judgment, which will necessarily incorporate such fundamental facts as are before the Court in determining

the issues here involved. This, however, so far as may be possible, will be carried out in collaboration with counsel for defendants and an order may be entered requiring such findings and conclusions, reserving proper exceptions to defendants, together with an appropriate judgment, to be submitted to the Court on or before December 27, 1948.