**KENNEDY et al. v. SEABOARD OIL CO. OF DELAWARE.**

No. 22469.

United States District Court
N. D. California, S. D.

Sept. 6, 1951.

Pedder, Ferguson & Pedder, San Francisco, Cal., for plaintiff.

Herbert W. Clark, San Francisco, Cal., Alfred W. Mitchem, Los Angeles, Cal., for defendant.

HARRIS, District Judge.

Plaintiffs, heirs of the late Frank Kennedy, ask for an accounting from March 31, 1931, to date, from defendant, Seaboard Oil Company of Delaware. They base their alleged cause of action upon an interest in certain oil lands in the Kettleman Hills region of California, which lands defendant and its predecessors have developed over the years subsequent to the date of March 1931.

The present suit was commenced by Frank Kennedy September 25, 1941. It was removed to this Court February 4, 1943. Plaintiff Kennedy delayed action thereafter as shown by affidavits,[1] because of related

1. Plaintiff's affidavits numbered 18 and 20.

litigation pending in the District Court for the Southern District of California. The United States was there proceeding against General Petroleum Corporation, et al., in its suit to recover additional royalty payments, which it contended it was entitled to by reason of a different pricing structure from that utilized by the oil company over the years of its lease. The suit culminated in favor of the government on March 30, 1946, D.C., 73 F.Supp. 225, affirmed Continental Oil Co. v. U. S., 9 Cir., 1950, 184 F.2d 802.

The government action against General Petroleum Company dealt with the value of oil produced in the Kettleman Hills during the same period involved in the present litigation. The Court held that the market had not been a free one, at least up to August 29, 1935, and that the royalty paid the government, the owner of the land, was inadequate.

Plaintiffs' predecessor, on learning of the government's suit, first became apprised of the fact that the basis for his own royalty receipts, may not have been a correct one. Negotiations between him and his assignee failed to satisfy Kennedy of the propriety of the adjusted payment. Therefore he commenced the present action.

Defendant has moved the Court to dismiss on the ground that plaintiff's right to an accounting is barred by the statute of limitations which is effective for all purposes prior to September, 1937. Defendant asks the Court to dismiss the action for an accounting as to all matters arising prior to the four-year period covered by the statute of limitations. Defendant contends that such dismissal will dispose of the entire action for all practical purposes. Such contention is based upon the decision in United States v. General Petroleum Corporation, supra, which held that pricing practices of the defendants were competitive after 1935.

In order that plaintiffs may establish their right to an accounting from March 31, 1931, to date, they must allege a fiduciary relationship with defendant so as to avoid the bar of the statute of limitations. Plaintiffs have sought to accomplish this result by pleading co-adventure or tenancy in common or joint adventure in the land or a relationship of trust and reliance which led to the production of oil and out of which the present royalty dispute has arisen. The Court will review, briefly, the relationship of the parties with respect to the oil lands involved before it attempts a legal analysis of the motion to dismiss.

There are two parcels of land involved in the instant case. Frank Kennedy was the owner in fee of one parcel which defendant has chosen to designate A. This parcel Kennedy sold to defendant's predecessor, reserving a percentage royalty interest in the production of oil and gas from the land. The other parcel, designated B, was owned by the United States. Kennedy had obtained a permit from the government to exploit this land and assigned his interest to defendant's predecessor. As in the case of parcel A, Kennedy reserved a royalty out of the production of oil and gas that might be realized from parcel B. In each case, Kennedy's agreement stated that the reserved royalty constituted a covenant running with the land.

In the beginning of 1931 both parcels became part of the Kettleman North Dome Association, a California corporation. This organization was established to operate oil lands in a certain area. It required the several members of the association to transfer all their equipment to the association which was to take exclusive possession of the lands for purposes of development and operation.

Defendant contends that joint participation of Kennedy and defendant in the Kettleman North Dome Association[2] ter-

2. Numerous operators in the Kettleman Hills production area reached a so-called "shut in" agreement in 1929 in order to eliminate wasteful competitive practices in the area. The agreement was entered into between the United States, its permittees and the owners and lessees of most of the land in the field. The major purpose of the Kettleman Hills agreement was to limit production for a certain period pending arrangements for development and operation of the acreage as a unit. The terms of the agreement were authorized through the

minated any unity of interest which may have existed between the grantor and grantee of parcel A. Up to the time of the Kettleman agreement, unity of possession may have existed and may have entitled Kennedy to enter the property and drill oil for himself. But after February 1931 such right it is claimed ceased to exist and rested exclusively with the new Kettleman North Dome Association.

The several exhibits which plaintiffs have attached to the complaint and which establish the basis for the present litigation set forth the documents of assignment of the particular parcels involved and indicate the relationship existing between the parties. According to plaintiffs' interpretation of Exhibit A there was a reservation by Kennedy which excepted a certain percentage of the product of the land to the grantor. The deed provided that Kennedy should have the right to take the product in kind or in money, such option to be exercised not oftener than every six months. Under the reservation, Kennedy was to pay his share of taxes upon his portion of oil and gas reserved. Furthermore, the reservation was to be construed as a covenant running with the land.

Plaintiffs contend that the agreement between Kennedy and his grantee was of such a nature as to establish both co-adventure and a co-tenancy in parcel A and that by reason of such agreement Kennedy and his successors in interest were entitled to an accounting. Under Exhibit B, Kennedy conveyed his operational rights in the lands to which he held a United States permit. Under the assignment of his interest, once more Kennedy reserved to himself a royalty interest to be paid in oil or in money, such reserved interest to run with the land.

■ When, in 1931, Kennedy and his grantee agreed to deliver all of their possessory and operational rights to the Kettleman North Dome Association, their

agreement included a proviso, on page 19, that: *"Each member agrees to pay to his lessor or any other persons having valid claims to rentals, royalties or participation in the proceeds of his lands controlled by the association, the amount to which such person may be entitled \*. \* \*."* This language plainly protects the existing status of all parties to Kettleman North Dome Association. Whatever the relationship may have been at the time lands were deeded to Kettleman North Dome Association, such status is preserved.

If Kennedy actually enjoyed co-tenancy in his ownership of the product of the land and was entitled to a possession equal in dignity with that of the defendant, such right continued and thereafter Kennedy was entitled to a full accounting.

Despite the several assignments which have occurred over the years by reason of mergers, succession in interest and death, the relationship between the parties to the instant litigation is fundamentally the same as that which existed originally between Kennedy and his primary grantee and assignee. Thus, in applying the law to the facts of the case the Court finds itself with the following situation:

Kennedy, owner of parcel A, grants to defendant the right to remove oil from the land in consideration for payment of an overriding royalty in money or in kind from the proceeds extracted; in like manner Kennedy, permittee of parcel B, assigns his interest to defendant for operation of the land in order to obtain oil. Again, in consideration of the assignment, Kennedy reserves an overriding royalty, such reservation to run with the land. In the light of these relationships, is there a fiduciary status between Kennedy and defendant?

■ According to Summers on "Oil and Gas" commencing at page 320: " \* \* \* Where the assignment of a lease expressly provided that the reservation of an over-

---

office of the Secretary of the Interior and were carried out through the formation of a corporation known as Kettleman North Dome Association. The members transferred their operating rights and their productive facilities to

the association. Each member was to receive his proportionate share from the production realized on the lands conveyed to Kettleman North Dome Association.

riding royalty should apply to extensions, renewals or modifications of the lease that the assignee or his successors might secure, it was held that such provision created a relation of trust and confidence between the assignor and his assignees permitting the assignor to payment of the overriding royalty reserved in the assignment out of oil or gas produced under the second lease."

In the instant case plaintiffs' predecessor, by reason of his agreement, established such a relationship of trust and confidence when he reserved a royalty interest which was to run with the land. Thus, in each instance he sought to establish a fiduciary relationship in accordance with the principle enunciated by Summers.

Defendant places reliance on the case of La Laguna Ranch Co. v. Dodge, 18 Cal.2d 132, 114 P.2d 351, 135 A.L.R. 546, for the position that the relationship created in the instant case is not that of co-tenancy as a matter of law. It is true that in the La Laguna case the Court held that the agreement before it failed to establish in the holder of an overriding royalty a co-tenancy in the *profit a prendre* as a matter of law. But it did not rule out the possibility that such a relationship might be established under a different set of facts. Such set of facts, disclosing an intention to create a fiduciary relationship, appears to exist in the case at bar.

Analysis of the La Laguna case discloses that the Court recognizes that parties who have an interest in a *profit a prendre* may well be co-adventurers if it be established that the lease agreement establishes a joint interest in real property.

The defendant, itself, concedes that the agreement covering parcel A might well be construed to establish a co-tenancy by reason of Kennedy's reservation in the original grant in the fee lands. It should be noted that not only did Kennedy reserve an interest in land, but he also agreed to pay taxes upon such interest. Such obligation still exists. Under these circumstances the initial arrangement would appear to have been that of co-adventurers in all development and from such relationship a fiduciary duty arose on the part of defendant.

Even though the Court find that Kennedy conveyed the totality of his interest in the two parcels of land to his grantee (Parcel A)-assignee (Parcel B), it would appear that he intended to establish a fiduciary relationship.

Oldland v. Gray, 10 Cir., 179 F.2d 408, holds that in the absence of a tenancy in common or joint adventure the relationship of the parties may be such as to require the Court to impress a trust. Also, such cases as Taylor v. Odell, 50 Cal.App.2d 115, 122 P.2d 919; Heaston & Glimpse v. West American Oil Co., 44 Cal.App.2d 107, 111 P.2d 905, suggest that the courts will go far to find a trust in order to protect a party from the inequitable conduct of an assignee or grantee.

With respect to plaintiffs' acceptance of a check from defendant in alleged satisfaction of the disputed amount owing, a review of the transaction whereby Kennedy received payment of a substantial sum from defendant discloses that his acceptance was merely "on account." There was no accord and satisfaction and no final disposition of the disputed claim which he was making against the defendant. The several authorities cited by plaintiffs in opposition to the motion to dismiss indicate that the conduct of Kennedy under the circumstances did not give rise to satisfaction which would foreclose this Court from ordering a complete accounting for the period subsequent to 1931. Whepley Oil Co. v. Associated Oil Co., 6 Cal.App.2d 94, 44 P.2d 670; Meyers v. Texas Co., 6 Cal.2d 610, 59 P.2d 132; Saulsbury Oil Co. v. Phillips Petroleum Co., 10 Cir., 142 F.2d 27.

It is the view of this Court that the facts in the instant case distinguish it from La Laguna Ranch Co. v. Dodge, supra, and other cases relied upon by defendant. In the La Laguna case, 18 Cal.2d at page 140, 114 P.2d at page 356, the Court said, in part: "No contention was made that the surrender of the lease was a fraudulent act or that others were unjustly enriched at the expense of the overriding royalty holders. If fraud or inequity were present, the courts would stand ready to provide redress for the injured party."

734

Kennedy and Seaboard's predecessors in interest entered into a transaction under which Kennedy reserved an interest in oil production and royalties in exchange for his interest in land and a prospecting permit. In accordance with the agreement, defendant's predecessors undertook to develop the property and to account to their grantor-assignor for the value of his reserved share. Kennedy exercised his option to be paid in money's worth. When Kennedy became suspicious he acted with diligence in requesting an accounting.

The relationship between the parties is such as to establish defendant as a trustee to account to plaintiffs as beneficiaries of such trust.

The Court concludes from a review of the pleadings and the several exhibits in support thereof that equity and justice weigh heavily in favor of the plaintiff herein and should not be defeated when, as it appears, an unjust enrichment is the inevitable result.