176 Kan. 572 (1954)
271 P.2d 271
W.F. HOWELL, Appellee,
v.
COOPERATIVE REFINERY ASSOCIATION, a Cooperative Corporation, W.A. GRANT and ELAINE GRANT, Appellants. (WICHITA BANK FOR COOPERATIVES, a Federal Cooperative Corporation, Defendant.)
No. 39,453
Supreme Court of Kansas.
Opinion filed June 12, 1954.
J.B. McKay, of El Dorado, argued the cause, and Ralph E. Hoke, of Prairie Village, and James B. McKay, Jr., of El Dorado, were with him on the brief for appellants.
Robert Martin, of Wichita, argued the cause, and Tom Smyth, of Ness City, and George B. Collins, Oliver H. Hughes, K.W. Pringle, Jr., and W.F. Schell, all of Wichita, were with him on the brief for the appellee.
The opinion of the court was delivered by
THIELE, J.:
This was an action in which the plaintiff sought to have his interest in an oil and gas lease determined. The defendant Cooperative Refinery Association, later referred to as C.R.A., and its co-defendants Grant demurred to plaintiff's petition and that demurrer being overruled, an appeal to this court was perfected by them.
The following facts are disclosed by the allegations of the petition and the exhibits attached to it. All of the real estate hereafter mentioned lies in Township 18 South, in Range 26 West, in Ness County. Prior to September 9, 1947, Howell owned oil and gas leases on three tracts in sections 14, 23 and 24 containing a total of 400 acres, the leases providing for a one-eighth interest to the lessors and a seven-eighths interest to the lessee, and at that time he was negotiating with the owners thereof for oil and gas leases on other tracts in *573 sections 13 and 14 containing 240 acres and abutting the above 400 acres. On the above date Howell entered into a contract with C.R.A. in which Howell agreed to obtain the lease on the 240 acres and assign all of the leases to C.R.A. reserving and retaining to himself an overriding royalty of one-sixteenth of the lessee's interest and C.R.A. agreed to drill an oil and gas well at a designated location under conditions not of present importance. The present controversy arises out of the tenth paragraph of the above contract, which recites as follows:
"TENTH: It is further understood that the parties hereto will attempt to secure an oil and gas lease covering the
West Half (W1/2) of Section 23, Township 18 South, Range 26 West of the 6th P.M., Ness County, Kansas;
which if obtained is to be for a consideration not to exceed $2.00 per acre, unless otherwise authorized by C.R.A., and said lease is to be taken in the name of Howell, C.R.A. to pay for said lease if obtained, and Howell to assign the entire lessee's interest to C.R.A., retaining unto himself an overriding royalty of 1/32nd of 7/8ths working interest, free and clear of any and all cost of development and operating expense, except as to taxes that may be levied and assessed against said reserved interest; it being specifically understood that it is not mandatory upon Howell to secure the said lease."
It is noted here that the lands last described abut the block of lands in the leases first mentioned on the south and west sides, and the whole constitutes a block of 960 acres. After the above contract was executed leases were taken in the name of Howell on the lands described in paragraph ten, dated September 9, 1947, and for a primary term of three years and as long as oil or gas was produced, and under date of October 16, 1947, Howell assigned the leases to C.R.A. reserving an undivided interest in all oil, gas and casinghead gas produced and saved "from the above described oil and gas leasehold estate, or any extension or renewal thereof, ... The provisions hereof shall be construed as covenants running with the lands and the leasehold estate conveyed hereby, and shall be binding upon the successors in interest of the Assignor and Assignee herein." C.R.A. did nothing to perpetuate this lease prior to September 9, 1950, and on October 16, 1950, released the same of record. Later and under date of October 24, 1951, C.R.A. obtained a new oil and gas lease on the same lands from the owners thereof for a primary term of one year and as long thereafter as oil and gas was produced.
W.A. Grant and Elaine Grant have some interest in the lease on the west half of section 23, but generally they will not be separately referred to in our review of the pleadings.
*574 On November 16, 1953, plaintiff commenced the instant action. In his petition Howell alleged the statutes of the defendants and that he was a geologist experienced in the development of lands for oil and gas purposes and prior to September 9, 1947, was the owner of leases on the 400 acres above mentioned and was negotiating for leases on the 240 acres above mentioned, and in connection with such leases he had prepared valuable and confidential geological maps and information and submitted them to C.R.A. with a proposal that C.R.A. purchase the leases and drill a test well under an arrangement that Howell was to retain an overriding royalty as part of the consideration, and that on September 9, 1947, C.R.A. accepted his offer and the contract was reduced to writing; that he fully performed the contract and in accordance with paragraph 10, quoted above, obtained leases which he assigned to C.R.A. reserving an overriding royalty to himself, and by reason of the filing and recording of the same all parties in interest claiming under C.R.A. had notice of his rights. He further alleged that about November 1, 1947, C.R.A. commenced the drilling of a test well on a location in section 24 which was completed as a commercial producer of oil on January 27, 1948, and thereafter and prior to September 9, 1950, C.R.A. drilled and completed three commercial producers and one dry hole at various locations on the northeast quarter of section 23; that for some reason unknown to Howell, C.R.A. failed and refused to drill a well on the west half of section 23 and thereby perpetuate the lease by production prior to September 9, 1950, and on October 16, 1950, C.R.A. released the lease; that prior to the expiration of the leases on the west half of section 23, Howell called attention of C.R.A. to the fact the leases were about to expire and would have to be renewed and from that time until the leases were eventually renewed he continued to work with C.R.A. to assist in their renewal and the development of the block of acreage, and during the time from the expiration of the first leases until their renewal C.R.A. made repeated efforts to obtain renewals; in September, 1951, C.R.A., at the insistence and suggestion of Howell, made contact with one Levan, who was acquainted with the owners of the land, to obtain additional geological information and to secure a renewal lease, and on October 24, 1951, Levan obtained an oil and gas lease, heretofore mentioned; that the lease so obtained was in fact a renewal of the leases assigned by Howell to C.R.A., and that under the terms of his contract with C.R.A. and of his assignment *575 of the leases from Howell to C.R.A. reserving an overriding royalty to him, he was the owner of an overriding royalty in the lands covered by the renewal leases; that for a reasonable time after the acquisition and recording of the renewal lease, Howell, not being informed to the contrary, believed the C.R.A. intended to and would in due course, deliver to him an assignment of his overriding royalty interest in the lease; that about the time the first test well was commenced on the west half of section 23 by C.R.A., Howell made inquiry and demand on C.R.A. for an assignment which C.R.A. refused. After alleging the respective interests of C.R.A. and the Grants, it was further alleged that with full knowledge of Howell's rights, they drilled and completed two producing wells on the west half of section 23. Allegations of the interest of Wichita Bank for Cooperatives need not be noticed. Howell further alleged he was owner of an overriding royalty from the lease on the west half of section 23, and entitled to a conveyance thereof and for an accounting and he prayed accordingly.
The C.R.A. and the Grants demurred to the petition on the grounds that several causes of action were improperly joined and that the petition did not state facts sufficient to constitute a cause of action. This demurrer was overruled and an appeal to this court followed, the only specification of error being that the trial court erred in overruling the demurrer.
We first note that in this court no contention is made there was any misjoinder of causes of action, and that phase of the demurrer will not be discussed.
A summary statement of appellants' contention is: 1. That no cause of action exists unless the second lease of October 24, 1951, is a renewal of the first leases of September 9, 1947, assigned to C.R.A. on October 16, 1947; 2. That the second lease was not an extension or renewal of the first leases; and 3. That the provisions of the assignment of October 16, 1947, violated the rule against perpetuities.
Taking up the first contention appellants contend that no fiduciary relation existed between them and appellee (citing Robinson v. Eagle-Picher Lead Co., 132 Kan. 860, 297 Pac. 697); that they were under no obligation to drill a well or renew the lease (citing Matthews v. Ramsey-Lloyd Oil Co., 121 Kan. 75, 245 Pac. 1064), and that an overriding royalty interest under one lease does not attach under a subsequent lease (citing Gordon v. Empire Gas & Fuel Co., *576 63 F.2d 487; Goocey v. Hopkins, 206 Ky. 176, 266 S.W. 1087; Wier v. Glassell, 216 La. 828, 44 So.2d 882).
Appellee answers contending that none of the cases relied on by appellants involve a situation where the assignment of the lease covered renewals or extensions of the lease, and directs attention to Probst v. Hughes, 143 Okla. 11, 286 Pac. 875, 69 A.L.R. 929, involving a situation similar to that now presented, and where it was held that a fiduciary relation between assignor and assignee did exist. He relies also on Lonabaugh v. Midwest Refining Co., 285 Fed. 63; Kennedy v. Seaboard Oil Co. of Delaware, 99 F. Supp. 730; Oldland v. Gray, 179 F.2d 408, and Hivick v. Urschel, 171 Okla. 17, 40 P.2d 1077. By way of a reply brief, appellants say that the cases cited by the appellee are not in point or are to be distinguished.
While in a broad sense and as pertinent here "confidential relation" may be defined as meaning a relationship between business associates that would lead an ordinarily prudent person in the management of his business to repose that degree of confidence in another which results in the substitution of the other's will and judgment for his in material matters involved, it has been defined in the law as any relation existing between the parties to a transaction wherein one party is bound to act with utmost good faith for the benefit of the other party, 15 C.J.S. 821.
We think it unnecessary to take up each case cited by the opposing parties, to analyze it and to point out wherein it supports a particular contention, or may possibly be distinguishable insofar as the factual situation is concerned. The cases have been examined, and in our opinion the proper conclusion to be drawn from them is fairly stated in 24 Am. Jur. 590, where it is said:
"§ 82. Relationship Arising from Transfers.  While the transfer of a lease does not ordinarily create any confidential relationship between the parties, this is not, of course, always the case. The terms of the conveyance may be such as to impose upon the assignee or sublessee the duty of protecting the interests of the assignor or sublessor; and, whenever they are of such character, he must comply with the general rules that govern the conduct of persons occupying a trust status, and any effort on his part to procure from the lessor rights antagonistic to those of the assignor will be defeated. Thus, when an assignment expressly provides that any extension or renewal of the lease shall be subject to the overriding royalty therein agreed upon, the courts will regard a new lease procured by the assignee as an extension or renewal of the old one and charge it with the royalty so reserved, even though it was not granted until production under the former lease had come to an end."
The question whether a confidential relation existed between Howell and C.R.A. may be said to extend back to and have its *577 origin in the contract of September 9, 1947, where under the tenth paragraph it was stated:
"It is further understood that the parties hereto will attempt to secure an oil and gas lease ... to be taken in the name of Howell, C.R.A. to pay for said lease if obtained, and Howell to assign the entire lessee's interest to C.R.A., retaining unto himself an overriding royalty ..."
This language is easily susceptible of interpretation as providing for at least a form of joint interest and joint ownership, for as stated the parties are to attempt to secure the lease, and if it is secured what is to be done. As alleged in the petition Howell did get the lease and he did assign it to C.R.A., the assignment reserving to him the agreed overriding royalty "from the above described oil and gas leasehold estate, or any extension or renewal thereof," and the assignment was accepted by C.R.A. In our opinion the allegations of the petition are sufficient to charge a confidential relation between C.R.A. and Howell, and, under the facts pleaded, C.R.A. was under obligation to keep the lease in force by development, or if it did not do so and the lease was renewed or extended, Howell's right to the overriding royalty continued.
Appellants contend that the lease of October 24, 1951, to C.R.A. on the west half of section 23 was not a renewal of the leases of September 9, 1947, assigned to C.R.A. by Howell and our attention is directed to the fact that Howell had one lease on the north half of the tract and another on the south half thereof, while the C.R.A. lease was a single lease on the whole tract; that the original leases had a primary term of three years, while the last lease had a primary term of only one year; that the first leases expired September 9, 1950, and the second lease was not made until October 24, 1951, or over thirteen months after expiration of the first leases. Appellants state they have found no case very closely in point, but after citing definitions of the words "renewal" and "extension" they argue that by reason of the differences in the leases as above noted, the second lease may not be said to be either renewal or extension of the leases assigned to them by Howell. Appellants denominate Howell's allegation that he continued to work with C.R.A. to assist in the renewal of the leases as a conclusion rather than an allegation of fact; that he was under no obligation to do anything and if he volunteered his assistance C.R.A. did not incur any new or independent liability by accepting his assistance. We note that appellants did not motion the petition and the rule of strict construction has no application. Further, it is not proper to say that Howell's *578 allegation he assisted in procuring a renewal is a conclusion not admitted by the demurrer for the whole allegation is broader and includes that he called attention of C.R.A. to the fact the original leases were about to expire; that he suggested and insisted that Levan be employed to obtain additional geological information and to secure new leases, and that that was done. The confidential relation between C.R.A. and Howell was not a one-sided one. Each owed the other mutual duties. Nor do we place any undue weight on the length of time elapsing between expiration of the first leases and execution of the last lease, for under the allegations of the petition before the first leases had expired C.R.A. had made repeated efforts to obtain a new lease and had negotiated for a new lease, and after acting on the suggestion of Howell that Levan be employed to secure additional geological information and a new lease, Levan was employed and the new lease was procured. We do not know just what the evidence on a trial may disclose, but at least so far as the allegations of the petition are concerned we think it must be said that the second lease is to be construed as a renewal or extension of the former leases on the involved tract.
Appellants also direct attention to that part of Howell's assignment of the leases to C.R.A. reserving an overriding royalty from the leasehold estate and especially to the phrase "or any extension or renewal thereof" and to the sentence that the provisions of the assignment shall be construed as covenants running with the lands and leasehold estate, and shall be binding upon the successors in interest of the parties, and make an extended argument that the rule against perpetuities was violated; that the provision as to any extension or renewal, coupled with the provision as to a covenant running with the land, provided a possible contingency for an estate which might but would not necessarily become vested within a period of twenty-one years, and that in such case the provision is unenforceable. We have examined but shall not review the cases cited by appellants for as we analyze and construe the above provisions the interest of Howell in the Howell in the extended lease was not one that would arise in the future and it would not be contingent. Howell's rights under the leases or the extended lease were vested in him when the assignment was made and accepted, and in such case the rule against perpetuities has no application, McEwen v. Enoch, 167 Kan. 119, 204 P.2d 736.
The order of the trial court in ruling on the appellants' demurrer to the appellee's petition is affirmed.